154

F. Enterprises, Inc., et al., Appellees, *v.* Kentucky Fried Chicken Corporation, Appellant.

[Cite as F. Enterprises v. Kentucky Fried Chicken Corp. (1976), 47 Ohio St. 2d 154.]

(No. 75-946—Decided July 21, 1976.)

156

*Messrs. Feibel, Feibel, Shamansky & Rogovin, Mr. Richard D. Rogovin* and *Mr. James B. Feibel,* for appellees.
*Messrs. Teaford & Bernard, Mr. Bernard Bernard* and *Mr. A. W. Bernardo,* for appellant.

STEPHENSON, J. Although the issue of whether there existed a valid contract between the parties was a much litigated issue in the courts below, and has resulted in a voluminous record, such issue was settled in the second appeal to the Court of Appeals and is not now before us. The issue this appeal presents is whether the trial court applied the correct rule as to measure of damages for breach of the contract by appellant. The novelty herein lies in the fact that at the time of the breach, appellees, the prospective lessors, did not own the land which was the subject of the proposed lease nor had they erected the building as required under the terms of the proposed lease.

On January 20, 1968, appellees entered into an option with the H. Corporation for the purchase of a parcel of real estate fronting 170 feet on Morris Road in Franklin County for the sum of $85,000. Shortly thereafter, negotiations began between appellees and appellant, resulting in a contract between the parties for a 20-year lease at a monthly rental of $1,100 for 85 feet of the frontage on Morse Road, which was about 50 percent of the whole of the tract under option by appellees. It was agreed that as a part of the lease, appellees would construct a building on the leased

premises not to exceed a cost of $40,000, appellees having the option to require appellant to erect the building with appellant being reimbursed by appellees in a sum not to exceed $40,000.

On August 12, 1968, appellant notified appellees by letter that it would not enter into the lease. On November 18, 1968, appellees exercised their option for the whole tract. The fair rental value of the 85-foot tract, if improved with a building, was $9,025 per year; without improvement, the fair rental value was $3,825 per year. The judgment of $28,508.89 was determined by the trial court in accordance with the opinion of the Court of Appeals.*

Appellant urges this method of calculation is erroneous in that, upon appellant's breach of the contract, appellees were required to minimize their damage, and, since appellees were not *required* to exercise their option, even though, in fact, they did so, that appellant's liability for

---

*The method of calculation by the trial court was as follows:

| | |
|---|---|
| Contract rental per year | $ 13,200 |
| Market rental value per year | (9,025) |
| Difference | 4,175 |
| Interest income on unexpended $40,000 for building, per year | (2,400) |
| Difference | 1,775 |
| Term of lease in years | X   20 |
| Result | $ 35,500 |
| Discounted value of $35,500 to current value | $ 20,809.41 |
| Interest at six percent | 7,699.48 |
| Damage Award | $ 28,508.89 |

In their brief in the Court of Appeals, appellees state an arithmetical error was made in such calculation and that the correct figure should have been $28,842.58. Appellees waived any claim of error in such respect and such is not an issue in this appeal.

damages should be further reduced by a deduction for interest income for 20 years on one-half of the purchase price of the whole tract. Appellant then asserts that since over the twenty-year period such interest income, which is $51,-000, when added to the interest income on the sum unexpended for the building, $48,000, would exceed the difference between the fair market rental and the proposed lease rental for the term of lease, appellees suffered no damage and should recover nothing, except, perhaps, nominal damages. In short, appellant's argument is that appellees either suffered no damage or were, in fact, benefited by appellant's breach of the contract. Such conclusion is untenable and unsupportable under the record. We conclude that not only is appellant not entitled to the further reduction asserted, but also, that the courts below erred in allowing the deduction for the interest upon the $40,000 cost of the proposed building.

We agree with the Court of Appeals that the general rule of damages to be applied when there is an anticipatory breach by a proposed lessee of a contract to make a lease, which is a contract that vests no estate in the prospective lessee, is the difference between the fair market rental of the property proposed to be leased and the agreed rental to be paid in the proposed lease, such sum discounted to present value, together with any special damages arising from the breach. Such rule is one of almost universal application, is consistent with general contract law, and represents the weight of authority. 49 American Jurisprudence 2d 66, Section 23; 51C Corpus Juris Secundum 516, Section 201; Annotation, 54 A. L. R. 1355, 1359; 11 Williston on Contracts 564, Section 1404A; 3 Thompson on Real Property 240, Section 1064 (1959); *Malani* v. *Clapp* (Hawaii 1975), 542 P. 2d 1265. Such rule has been followed in Ohio. *Hickman* v. *Coshocton Real Estate Co.* (1936), 58 Ohio App. 38. See, also, 33 Ohio Jurisprudence 2d 294, Section 26. The general rule of necessity is formulated upon the basis of, and takes into consideration, any expenditures for improvements the lessor is required to make under the con-

tract, inasmuch as the agreed payments in the proposed lease reflect such improvements. Such rule, therefore, gives to the defaulting prospective lessee the benefit of any expenditures, such as erection of a building, the prospective lessor was required to make, by reflection of such expenditures in rental obtainable for the improved property on the open market.

Where the courts below erred in their computation of the damage award was, after giving appellant the benefit of the investment by appellees of the $40,000 to help produce the rental income of $9,025, to again give appellant credit for the interest income upon the $40,000. Such $40,000, if invested in the building, could not be at the same time retained by appellees and also constitute a source of interest income to them.

When a contract is repudiated at a time when the injured party has not yet performed, ordinarily a savings to the injured party occurs by reason of not having to perform his promise. Such savings is deducted from the compensation under the contract the injured party would have received from the breaching party had the contract been fully performed, since the injured party is only entitled to a damage award which places him in as good a position as he would have been had the contract been fully performed. *Allen, Heaton & McDonald, Inc.,* v. *Castle Farm Amusement Co.* (1949), 151 Ohio St. 522; Restatement of Contracts 533, Section 335. It is upon this principle that appellant relies; although, in its brief, appellant's argument is framed in the context of the doctrine of avoidable consequences. As will be seen hereafter non-exercise of the purchase of the land by the appellees, under the facts of this case, would not have effected a saving to appellees but actually increased their damages from the breach of the contract by appellant.

The doctrine of avoidable consequences is a rule also arising from the cardinal principle that the damage award should put the injured party in as good a position had the contract not been breached at the least cost to the default-

ing party. It is applied, in substance, to prevent an inclusion in the damage award of such damages that could have been avoided by reasonable affirmative action by the injured party without substantial risk to such party. 5 Corbin on Contracts 241, Section 1039.

Whatever should be the rule with respect to the breach of a lease by a lessee, a question not before us, as to the breach by a prospective lessee of a contract to make a lease, we agree with the rule, representing the weight of authority, that recovery of damages by the prospective lessor is limited to only those damages arising from the breach which could not, by reasonable effort on his part without undue risk or expense, have been averted or reduced. *Wright* v. *Baumann* (1965), 239 Ore. 410, 398 P. 2d 119; 11 Williston on Contracts 274, Section 1353; 16 Ohio Jurisprudence 2d (Rev. Ed.) 38, Section 20 (Damages); *Hough* v. *Stone* (1925), 21 Ohio App. 444; *Kirland* v. *Wolf* (1878), 7 Dec. Rep. 436.

It is to be noted that the general rule of damages gives recognition to a prospective lessor's obligation to minimize damages by renting on the open market to others. Thus, as stated in *Branning Mfg. Co.* v. *Norfolk-Southern R. Co.* (1924), 138 Va. 43, 60, 121 S. E. 74, 80, "[I]n effect, the measure of damages stated minimizes the damages of the plaintiff in such case, which is a duty which rests upon the plaintiff in all such cases. *James* v. *Kibler's Adm'r, supra*, 94 Va. 165, 26 S. E. 417." To the extent that the prospective lessor has made a "good" or "bad" bargain, it will be reflected in a difference between the agreed rental and market rental. Conceivably, the market rental could exceed the agreed rental so that no pecuniary loss is suffered by the prospective lessor by the prospective lessee's breach.

In order to comply with the contract to make a lease, the prospective lessor at the time of execution of the lease, must own or otherwise have an interest in the premises to let to the prospective lessee. In the ordinary case where the prospective lessor owns the premises at the time of contract, the value thereof, whatever the actual cost, is re-

flected both in the agreed rental and the fair market rental.

What should be the rule, however, if, as here, the parcel is not owned by the prospective lessor but is only the subject of an option? If the prospective lessee does not breach the contract but demands compliance, the prospective lessor is legally required, irrespective of the market value, to exercise his option for whatever sum was agreed to in order to perform his obligation under the contract for the lease.

Conceivably, by the expenditure of the option price, coupled with his obligations under the proposed contract of lease, the result would not be a pecuniary gain but, rather, a loss by the prospective lessor. In such a situation the prospective lessor suffers no damage and might monetarily gain by the breach of the contract by the prospective lessee. Since the general rule of damages would not reflect such fact in such a situation, a deduction from the sum arrived at by application of the general rule of damages above set forth would be proper. See *Allen, Heaton & McDonald, Inc., v. Castle Farm Amusement Co., supra* (151 Ohio St. 522), at page 525; *Doolittle & Chamberlain* v. *McCullough* (1861), 12 Ohio St. 360, 368; *Schmudde & Schultz* v. *Brunhoff* (1929), 9 Ohio Law Abs. 424, 425. However, under the facts of this case it is manifest that the non-exercise of the option would have been to appellees' monetary detriment and not benefit.

Appellees assert, and we agree, three alternatives were available to them upon the breach of the contract. First, they could decline exercise of the option and take no further action under the contract. In this event, they would have expended no funds and, as a result, had available to them the $42,500 (unexpended for land) and $40,000 (unexpended for building) to invest for a return of interest for the term of the proposed lease. Secondly, they could expend the $42,500 in buying the land and invest the $40,000 and receive interest for the term of the lease. Under this alternative they would derive the return from the fair market rental of the unimproved parcel ($3,825 per year) in addition to the interest return upon the $40,000 for the 20-year

period. Thirdly, they could have exercised the option for $42,500 as to the parcel here considered, erected the building and rented the improved tract upon the open market for $9,025, effecting an eleven percent return upon the investment.

Simple mathematical calculation of the above alternatives discloses that the non-exercise of the option, would have resulted in the greatest damage to appellees. Additionally, the non-exercise of the option would have required appellees to forego any profit that could be realized by a sale of the other half of the parcel not the subject of the proposed lease. See *Frederick Raff Co.* v. *Murphy* (1929), 110 Conn. 234, 243, 147 A. 709. The exercise of the option was thus a prerequisite to appellees' minimization of their damage. It follows, therefore, that since the exercise of the option did not increase but, rather, decreased appellees' pecuniary loss, no deduction from the difference between the agreed rental and fair market rental was warranted.

It follows that appellant is not entitled to the further reduction sought in the award of damages entered by the trial court.

Appellees now urge, intially in this court, and not in the courts below, that the trial court erred in deducting the interest income for 20 years upon the $40,000 and we should, therefore, in this appeal, under authority of *New York Life Ins. Co.* v. *Hosbrook* (1935), 130 Ohio St. 101, increase the verdict by such amount and, additionally, increase the verdict by a $6,000 claimed special damage. We agree the interest deduction was improper; but disagree that we may increase the judgment. In *Hosbrook*, this court overruled the first two paragraphs of the syllabus in *Gohman* v. *St. Bernard* (1924), 111 Ohio St. 726, and held that a prior erroneous unappealed decision of a Court of Appeals which established the law of the case for a subsequent trial, which erroneous decision is adhered to by the Court of Appeals in a second appeal, does not bind this court upon a further appeal.

Even though this court is not bound by such erroneous

decision under *Hosbrook, supra*, it is still necessary that the claimed error be properly before this court, which it is not in this case for two reasons. The first is the policy of this court not to review questions not presented in the Court of Appeals, *State v. Phillips* (1971), 27 Ohio St. 2d 294; *State v. Wallen* (1971), 25 Ohio St. 2d 45; *State v. Jones* (1965), 4 Ohio St. 2d 13. Assuming that such refusal to review is not constitutionally mandated but discretionary, see *State v. Schaeffer* (1917), 96 Ohio St. 215, there is much to be said in the interest of justice in affording the relief appellees seek at least with respct to the interest deduction. Even though we might be so inclined, such grant of affirmative relief is foreclosed by the reason that appellees have not cross-appealed from the judgment of the Court of Appeals by the filing of a notice of appeal. Because they have not, we are without authority to grant affirmative relief by modifying the judgment of the Court of Appeals in appellees' favor. *Pressley v. Norwood* (1973), 36 Ohio St. 2d 29; *Parton v. Weilnau* (1959), 169 Ohio St. 145.

The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, and W. BROWN, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting for P. BROWN, J.