## McDonald
### v.
### Toledo Mental Health Ctr.
*[Cite as 2 AOA 589]*

*Case No. 89AP-582*
*Franklin County, (10th)*
*Decided April 19, 1990*

*R.C. 2743.02*

*Rogers & Godbey Co., L.P.A., and Mr. George C. Rogers, for appellant.*

*Mr. Anthony J. Celebrezze, Jr., Attorney General, Ms. Debra J. DeSanto and Mr. Timothy Bojanowski, for appellee.*

KERNS, J.

On April 18, 1986, Lillie Mae McDonald was murdered by her son Ronald McDonald while he was on a fourteen-day pass from the defendant, Toledo Mental Health Center, and on April 18, 1988, another son, Lawrence McDonald, commenced this wrongful death action in the Court of Claims alleging that the death of his mother was due to the negligence of the mental health facility.

After hearing substantial evidence as to the conversations, happenings, and events which occurred prior to the murder, including testimony that Lillie McDonald lived in constant fear of her son Ronald who was a diagnosed paranoid-schizophrenic, the trial court found the decedent, Lillie McDonald, to be fifty-five percent negligent and the defendant, Toledo Mental health Center to be forty-five percent

negligent. Accordingly, judgment was entered in favor of the defendant-appellee (R.C. 2315.19), and from the judgment so entered, the plaintiff-appellant has filed a timely notice of appeal to this court.

The plaintiff has set forth three assignments of error, two of which are directed, in one way or another, to the weight and sufficiency of the evidence:

"I. The Court of Claims erred in determining that plaintiff was guilty of negligence as a matter of law; plaintiff having done no act, nor having failed to act when she had a duty to act, eg. in failing to call TMHC when she had no duty in regard to this adult offspring.

"II. The Court of Claims erred in determining that plaintiff was guilty of negligence under the facts since the only information decedent was charged with having come from TMHC through the police officer and it is not negligent for her not to call TMHC and inform them of the same information received from them and because she was entitled to assume that TMHC was not negligent."

In this case, both contributory negligence and assumption of the risk were raised by the defendant in the pleadings, and the evidence submitted to the trial court refutes the subjective assumptions contained in the first and second assignments of error. In other words, the record discloses ample evidence to support the findings of negligence against both the mental health facility and the decedent, and under such circumstances, this court may not interfere. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77; *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279; 5 Ohio Jurisprudence 3d (1978) 191, appellate Review, Section 603.

Among other things, the evidence, and the only reasonable inferences deducible therefrom, show that Lillie McDonald maintained a submissive and passive attitude for five days prior to her death, while possessed of knowledge that Ronald had threatened to kill her, with knowledge from experience that her son could become violent, and with a constant fear for her own safety. As shown by the testimony of the plaintiff, Lawrence McDonald, the decedent lived with a conscious regard for the inherent danger in which she placed herself, but she did not want her son Ronald to leave her home. Moreover, both the decedent and the plaintiff assured the police only a few days before the murder that Ronald was all right, thus

assuming further responsibility for the uncertainties that attended his previous history and his mental illness. In fact, the trial court was probably on track when it observed in its decision that the wrongful death in this case may have been traceable to a mother's love for her children, but in any event, the plaintiff's allegation that the defendant presented no credible evidence of negligence to support the judgment is without merit. Hence, the first and second assignments of error are overruled.

The third assignment of error has been framed by the plaintiff as follows:

"III. The Court of Claims erred in finding decedent Lillie McDonald more negligent than TMHC when TMHC had a duty toward its patient Ronald McDonald which she did not, when TMHC had more recent information concerning Ronald McDonald's mental illness, history, and delusions than she did and when TMHC had in fact determined that Ronald McDonald was a danger to the decedent and failed to act when she had not made such determination and could not assume that TMHC was acting improperly."

In its decision, the trial court expressly found that the negligence of both parties directly and proximately contributed to the wrongful death of Lillie McDonald, and as heretofore indicated, the record discloses sufficient evidence to support the findings of the Court of Claims. But silently looming even greater in these proceedings than the negligence of either party was the inherent risk involved in the periodic release of a victim of mental illness. As noted by this court in *Leverett* v. *State* (1978), 61 Ohio App. 2d 35, "[b]oth private and public hospitals are faced with the extremely difficult task of balancing the interests of a patient who would benefit from permanent or periodic release, the interest of society in treating mental illness and returning the patient to a normal, productive life, and the interests of society in keeping a dangerous, mentally ill person off the streets.***"

Under the circumstances of the present case, who is to say where and in what proportion fault lies? Noticeably, the trial court made a reasonable analysis of the evidence before determining that the failure of the decedent to act during the five-day period between the police visit to her home and the fatal occurrence was the proximate cause of her tragic death. It is fundamental, of course, that this court may not merely substitute its judgment for that of the trial court as to whose underlying negligence was greater, and accordingly, the third assignment of error is overruled.

In its brief, the Toledo Mental Health Center has also set forth two cross-assignments of error, but the record fails to disclose that the defendant filed a notice of cross-appeal from the judgment of the Court of Claims. Under such circumstances, the assignments of error of the defendant may be considered only when necessary to prevent a reversal of the judgment under review, but not for the purpose of securing any affirmative relief. *Parton* v. *Weilnau* (1959), 169 Ohio St. 145; *F. Enterprises* v. *Kentucky Fried Chicken Corp.* (1976), 47 Ohio St. 2d 154; and *Whitacre* v. *Bd. of Education* (1974), 42 Ohio App. 2d 19. Hence, the defendant's assigned errors are overruled.

For the foregoing reasons, plaintiff's assignments of error are overruled; defendant's cross-assignments of error are overruled, and the judgment of the Court of Claims is affirmed.

*Judgment affirmed.*

REILLY, J., concurs.
BOWMAN, J., dissents.

KERNS, J., retired of the Second Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

BOWMAN, J., dissenting.

Being unable to agree with the conclusion reached by the majority, I must respectfully dissent. In *Cleveland Police Patrolmen's Assn.* v. *Voinovich* (1984), 15 Ohio App. 3d 72, at 75, the court held:

"*** [I]n reviewing a bench trial, an appellate court will uphold the trial court's evaluations unless it appears that the record is insufficient to support a reasonable person in concluding as the trial judge did."

Furthermore, it is well-established that reviewing courts will not reverse a judgment supported by competent and credible evidence going to all the necessary elements of the case as being against the manifest weight of the evidence. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77; *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279. In reviewing a decision of a trial court concerning the weight of the evidence, the appellate court's role is thus limited to determining whether the trial court abused its discretion. Abuse of discretion implies that the court's attitude is

unreasonable, arbitrary or unconscionable. *Angelkovski* v. *Buckeye Potato Chips Co.* (1983), 11 Ohio App. 3d 159; *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157.

The trial court correctly defined the general nature of contributory misconduct as follows:

"Negligence and contributory negligence are governed by the same basic rules. They are both measured by the same standard - the failure to exercise ordinary care. It has been said that contributory negligence is a matter of some fault or departure from the standard of conduct of the reasonable man, however unaware, unwilling, or even protesting the injured party may have been. Contributory negligence is defined to be such an act or omission on the party of a plaintiff, amounting to a want of ordinary care as, concurring or co-operating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of. It is the want of ordinary care by a person injured by the negligence of another, concurring with such negligence, and thus contributing to the injury as a proximate cause. (Citations omitted.)

"70 Ohio Jurisprudence 3d (1986) 144-145, Negligence, Section 65."

It is conceded that the decedent had the responsibility to exercise ordinary care in the manner a reasonable person under the similar circumstances would act for his or her own safety.

The majority is of the opinion that the record discloses ample evidence to support a finding of negligence against the decedent. Although determining the weight of the evidence is for the trier of fact, in this instance, there was simply insufficient evidence to weigh. Therefore, this is not a question of credibility or a weighing of the evidence. There is not sufficient evidence demonstrating the decedent did not exercise ordinary care for her safety during the five days leading up to her death.

The record does indicate that Ronald McDonald had threatened family members in the past and the decedent was said to have been apprehensive about him on occasion. However, she also had good reason to believe that he was receiving competent treatment at the Toledo Mental Health Center ("TMHC") and that it was safe for him to receive temporary leave from the facility. TMHC had a duty toward its patient, Ronald, and had a professional understanding of Ronald's problems, which the decedent did not.

Of importance is Dr. Teymour Sephabodi's testimony that TMHC's philosophy was to brief family members to signs of danger and what they should do if a problem arose. However, there is no evidence this procedure was followed with the McDonald family, especially with the decedent.

The only evidence presented that the decedent possibly knew that her son Ronald had called the TMHC and threatened to kill her was a police officer's testimony. The police officer who arrived at decedent's home testified that he told the decedent that the reason he was checking on her was because Ronald had called the state hospital and threatened her life. The record is devoid of any acknowledgement to the officer's statement. The decedent, who was confined to a wheelchair, was crying at the time of the officer's visit because no one would take her outside, but otherwise said she was fine. Although the appellant testified he was aware that his brother Ronald had stopped taking his medication, there is no evidence that the decedent had knowledge of this fact. Furthermore, there is absolutely no evidence whatsoever of Ronald's behavior during the five days between the initial visit by police and the fatal incident, nor is there any evidence that the decedent had reason to believe that she was in considerably more danger than in the past. There is nothing in the record to indicate the decedent had any other information to give TMHC or the police from the time of the initial visit by police to the date of her death. Assuming, *arguendo*, that the decedent had been especially fearful for her life during those five days, appellant stated in his deposition that his mother could not have called TMHC because it would take her awhile to find or focus on the numbers. He also stated that Ronald would move things around, including the phone book. The record is devoid of evidence showing that a reasonable person under similar circumstances as the decedent would have acted any differently.

There is simply not sufficient evidence showing the decedent did not exercise ordinary care for her safety as a reasonably careful person would be expected to do under similar circumstances. The decedent was a seventy-four-year-old mother confined to a wheelchair who had been around her mentally ill son most of his life. As previously noted, there is no evidence that her son was behaving in a more suspicious or dangerous manner during the five-day period preceding her death, so as to prompt the decedent to alter her accustomed routine.

Accordingly, I cannot concur with the majority that the decedent did not exercise ordinary care, which proximately caused her death.

Based on the evidence in the record, contributory misconduct on the part of the decedent would have to be based on the Toledo Police visit to the decedent's home and the past behavior of Ronald. In this instance, the state is blaming the victim for her own death.

For these reasons, I would find the trial court erred because its determination of contributory misconduct is against the manifest weight of the evidence.

Accordingly, I would sustain the assignments of error and reverse the judgment of the trial court.