HOMES BY CALKINS, INC., Appellant,

v.

FISHER, Appellee.

[Cite as *Homes by Calkins, Inc. v. Fisher* (1993), 92 Ohio App.3d 262.]

Court of Appeals of Ohio,
Butler County.

No. CA93–01–011.

Decided Nov. 1, 1993.

---

*Dinsmore & Shohl, Charles M. Roesch* and *Ann L. Munson,* for appellant.

*Scheper & McGowan, James H. Scheper* and *Farrell J. Goodman,* for appellee.

WALSH, Judge.

Plaintiff-appellant, Homes By Calkins, Inc., appeals an award of $6,029.47 entered December 21, 1992 against defendant-appellee, Walter Fisher, for breach of contract. Appellant argues that the damages awarded were inadequate.

Appellant and appellee formed a contract in June 1988 wherein appellee agreed to sell appellant a parcel of land located in Fairfield, Ohio. The contract expressly called for appellee to remove a residential use restriction contained in the deed. Appellee's attorney, Greg Howard, proceeded with a court action to remove the restriction, and appellee later obtained a court order to that effect. Appellant then closed the purchase and began to build office condominiums on the property.

Appellant entered into a contract to sell the first condominium to Dr. Eugene Sherwood. When appellant prepared to close the sale on this unit (hereinafter "the Sherwood unit"), Sherwood discovered that the previous court action to remove the residential use restriction was ineffective, and the use restriction was still in effect. Appellant notified appellee of this problem, and appellee's attorney, Howard, indicated his intention to correct the defect. At that time, appellant entered into another agreement with Sherwood, whereby Sherwood moved into the unit and paid rent to appellant pending removal of the deed restriction.

Sometime after Howard had filed another suit to remove the restriction, appellant retained its own attorney to enter an appearance in the case. Ultimately, the deed restriction was removed, and the Sherwood unit was sold eleven months after the original closing date on that unit.

Appellant sued appellee for breach of contract based on damages appellant allegedly suffered during this eleven-month period. The Butler County Court of Common Pleas found that appellee had breached the original land purchase contract by failing to effectively remove the deed restriction. The court held a bench trial on the issue of damages on October 1 and 2, 1992.

At trial, appellant claimed appellee was liable for additional interest appellant had paid on development and construction loans, and that appellee was liable for lost profits because appellant did not have the use of equity invested in the Sherwood unit or the profits derived from the sale of that unit. Appellant also claimed lost profits on units that went unsold during the eleven-month delay, lost goodwill, and damages for overhead expenses based on the time appellant's employees spent dealing with problems caused by the deed restriction. Appellant finally claimed as damages expenses appellant incurred in hiring an attorney to help remove the deed restriction. The trial court awarded damages only for the additional interest appellant had paid on loans that it obtained when it became apparent that expected cash flow from the sale of the Sherwood unit would be delayed.

Upon a timely notice of appeal, appellant asserts four assignments of error as follow:

Assignment of Error No. 1:

"The lower court erred in holding that there were no general damages."

Assignment of Error No. 2:

"The trial court erred in its finding that appellant's evidence on lost profits or return on investment was speculative."

Assignment of Error No. 3:

"The trial court erred in finding appellant's evidence unpersuasive with respect to employee time."

Assignment of Error No. 4:

"The trial court erred in finding that it was not necessary for appellant to hire counsel to assist in the removal of the deed restriction."

In its first assignment of error, appellant argues that the trial court erred in finding that there were no general damages. Appellant cites a portion of the trial court's decision where the trial court stated:

"The law of consequential damages in Ohio is derived from *Hadley v. Baxendale* which established a two-part test for damages. The breaching party is liable for general damages which naturally and necessarily result from the breach of the contract. The court finds there are no general damages in this case since the error was corrected within 11 months of the discovery and the damages sought by plaintiff are not the natural and probable and foreseeable consequences of the breach of covenant." (Citations omitted.)

 Compensatory damages are frequently classified as either general damages or special damages. General damages are damages that naturally and necessarily result from a wrongful act and which are directly traceable to, and the probable and necessary result of, injury caused by that act. 30 Ohio Jurisprudence 3d (1981) 19–20, Damages, Section 10; see, also, *Siegle v. Lee* (App.1948), 54 Ohio Law Abs. 408, 81 N.E.2d 809. " 'Special damages' are damages of such a nature that they do not follow as a necessary consequence of the injury complained of," *Gennari v. Andres–Tucker Funeral Home, Inc.* (1986), 21 Ohio St.3d 102, 106, 21 OBR 395, 398, 488 N.E.2d 174, 178, though they may in fact naturally flow from that injury, *Combs v. Simkow* (Nov. 21, 1983), Butler App. No. CA82–12–116, unreported, 1983 WL 6596.

The distinction between general and specific damages is principally important with regard to the pleadings in damages actions. 22 American Jurisprudence 2d (1988) 62, Damages, Section 36. "General damages, which necessarily result from the injury which forms the basis of the complaint, may be recovered under a general allegation of damage, whereas special damages must be specifically pleaded." (Footnote omitted.) *Id.* Defining general damages as those damages that naturally and necessarily flow from a breach of contract seems to have no meaning other than that there was reason to foresee such injury. 5 Corbin on Contracts (1964) 83, Section 1011. The terms, however, are not self-explanatory and the dividing line between what they signify is not capable of exact determination. *Id.* at 86.

Appellant essentially argues the trial court erred in determining that there were no general damages because the damages appellant claims, especially lost profits, were the natural and necessary consequence of appellee's breach. We disagree.

 In distinguishing between general and specific damages, a trial court must weigh all the available evidence to make the proper determination of fact. Thus, the determination of whether damages will be classified as either general or special falls within the broad discretion of the trial court. "[W]here there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the

reviewing court." *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742, 745. The trial court could reasonably conclude that none of appellant's alleged damages was the natural and necessary consequence of appellee's failure to properly remove the deed restriction at issue. Appellant states that "[i]t is common sense that land sold for commercial development to a developer will in fact be developed for profit." Lost profits, however, may not be the natural and necessary consequence of an eleven-month delay in removing a deed restriction. We are not convinced that the trial court abused its discretion in determining that no general damages existed in the case at bar.

Even if some of appellant's alleged damages were classified as general, however, such a classification would not have had any impact on the final determination of the trial court. Appellant claims that classification of the damages in this case was critical to the trial court's refusal to award damages as compensation. This is simply not true. The trial court stated:

"It is the court's opinion that if the damages were shown to be in the contemplation of the parties at the time the contract were [*sic*] entered into and the damages were reasonably foreseeable, certain to occur and not speculative, that plaintiff would be able to recover them."

The trial court simply set forth a general standard for determining whether damages can be granted in any given case. In fact, this standard is quite similar to the standard set forth in *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.* (1984), 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883, which appellant agrees set forth the correct test for the recovery of lost profits.

Damages, whether classified general or specific, will not be granted where the existence of such damages cannot be reasonably proven or are speculative. The basis of the trial court's decision regarding appellant's claims for lost profits and other damages was that appellant's evidence was highly speculative and unpersuasive in nature, and was not based on the trial court's determination that no general damages existed. We now hold that the trial court's determination that there were no general damages in this case was not clearly erroneous or an abuse of discretion, and did not amount to reversible error. Therefore, appellant's first assignment of error is overruled.

Appellant asserts in its second assignment of error that the trial court erred in finding that appellant's evidence on lost profits and return on investment was speculative. The Supreme Court of Ohio set forth the applicable test for the recovery of lost profits in *Combs Trucking*:

"The general rule is that lost profits may be recovered by the plaintiff in a breach of contract action if: profits were within the contemplation of the parties at the time the contract was made, the loss of profits is the probable result of the

breach of contract, and the profits are not remote and speculative and may be shown with reasonable certainty. 30 Ohio Jurisprudence 3d (1983) 100, Damages, Section 90." *Id.*, 12 Ohio St.3d at 244, 12 OBR at 325, 466 N.E.2d at 887.

The Supreme Court of Ohio elucidated on the third prong of the *Combs* test in *Gahanna v. Eastgate Properties, Inc.* (1988), 36 Ohio St.3d 65, 68, 521 N.E.2d 814, 818, wherein it stated "that in order for a plaintiff to recover lost profits in a breach of contract action the amount of the lost profits, as well as their existence, must be demonstrated with reasonable certainty."

We also note that " '[t]he difficulty of proving lost profits varies greatly with the nature of the transaction.' " *AGF, Inc. v. Great Lakes Heat Treating Co.* (1990), 51 Ohio St.3d 177, 181, 555 N.E.2d 634, 638, quoting Restatement of the Law 2d, Contracts (1981) 146, Section 352, Comment B. Courts have generally required greater certainty in proof of damages for breach of contract than for tort. *Kinetico, Inc. v. Independent Ohio Nail Co.* (1984), 19 Ohio App.3d 26, 30, 19 OBR 92, 96, 482 N.E.2d 1345, 1350, citing Restatement of the Law 2d, Contracts (1981) 144, Section 352.

Appellant argues under this assignment of error that it suffered lost profits in several different ways: lost profits based on the delayed return on equity and delayed profits on the units that had already been sold and closed; lost profits on units that went unsold; and lost profits due to damages for lost opportunity and goodwill.

Appellant first asserts it is entitled to a total of $82,641 in "lost profits" due to delay on the closing of the Sherwood unit. Appellant derives $29,481 of this figure from the fact that profits from the sale of the Sherwood unit were delayed for eleven months. Appellant arrives at the remaining $53,160 in "lost profits" because appellant was denied a return on its equity invested in the Sherwood unit.

Appellant did not actually suffer lost profits on the sale of the Sherwood unit since its profit on the sale of the Sherwood unit was not lost but only delayed for eleven months. Appellant argues, however, that it was denied an adequate return on its delayed profits and equity.

The expected profit on the Sherwood unit was $57,990. In January 1990, when it became apparent that closing on the Sherwood unit would be delayed, appellant took out two loans totaling $60,000 to compensate for lost cash flow expected from the Sherwood closing. The trial court correctly determined appellant was entitled to damages based on the interest appellant was forced to pay on those loans and awarded appellant damages in the amount of $6,029.47. Thus, the trial court did in effect award appellant a return on the delayed profits from the Sherwood unit.

The crux of appellant's argument is that it was entitled to a fifty-five percent rate of return on its delayed profits and delayed return on equity rather than the smaller rate of return the trial court actually allowed. Appellant arrived at its fifty-five percent rate of return by dividing the profit from the Sherwood unit, $57,990, by the amount appellant had invested in the unit, $104,566. Appellant then multiplied the delayed profit of $57,990 by fifty-five percent to arrive at a yearly return. Appellant arrived at damages of $29,481 based on this delay in receiving its profits, after it prorated the yearly return by eleven months.

The trial court correctly rejected appellant's argument that it was entitled to a fifty-five percent return on delayed profits. Appellant determined its rate of return solely from profits appellant generated from one contract for the sale of one condominium. Appellant's calculation did not take the potential risk of developing and selling any of the units into account. Simply because appellant earned a fifty-five percent return on its investment on the Sherwood unit does not mean it was certain to repeat that success on future units.

■ As a general rule, parties to a contract are required to mitigate damages whenever possible. A damage award should put the injured party in as good a position as it would have been in absent a breach, at the least cost to the defaulting party; and damages should not be included in an award that could have been avoided by reasonable affirmative action by the injured party. *F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.* (1976), 47 Ohio St.2d 154, 1 O.O.3d 90, 351 N.E.2d 121. Appellant justifiably attempted to mitigate damages caused by the lack of cash flow by borrowing a total of $60,000. Appellant was free thereafter to invest this money as it chose; presumably, it invested that money where it would earn the greatest rate of return. Under these circumstances, the appropriate measurement of damages equals the interest on the $60,000 appellant borrowed to make up for the delay in receiving its profits of $57,990. Since the trial court awarded appellant $6,029.47 in interest on its $60,000 in loans, appellant is not entitled to any additional damages for appellee's breach with regard to delayed profits.

■ Appellant also argues it is entitled to $53,160 in "lost profit" due to delay in the return on equity invested in the Sherwood unit. Appellant arrived at this figure by multiplying its investment of $104,566 in the Sherwood unit by the fifty-five percent rate of return we have just discussed. While the trial court correctly determined that appellant had not come forward with sufficient evidence to support a fifty-five percent rate of return, appellant was entitled to a return on its investment tied up in the Sherwood unit for eleven months. The trial court, however, did not recognize this loss. Therefore, this cause must be remanded so that the trial court may determine an appropriate rate of return on appellant's

equity in the Sherwood unit over the eleven-month period before the deed restriction was removed.

Appellant also argues that the trial court erred in not awarding it damages for lost profits on units that went unsold and for lost opportunity or goodwill. Appellant states that it received a thirty-seven percent markup above costs spent in constructing the Sherwood unit. If this margin were applied to all units, appellant claims it would have received an additional $142,437. The trial court pointed out, however, that appellant could not furnish testimony as to any specific loss of profits due to the encumbrance since no units were sold during the eleven-month period at issue. The trial court apparently also felt that it would be unreasonable to apply a thirty-seven percent markup on all unsold units, especially since there was evidence that the real estate market was not very stable during the eleven-month period.

Appellant argues it cannot satisfy the trial court's requirement that it establish that the thirty-seven percent markup from the Sherwood unit was "valid within the eleven month time period of this case," because it could not sell any units while the deed restriction was in place. Cliff Montgomery, a real estate salesman, testified for appellant that there was interest in some of appellant's units, but that once Montgomery told potential buyers of the deed restriction, he either lost the sale or sold those buyers other condominiums.

█ We recognize appellant's difficulty in demonstrating lost profits from units unsold during the eleven months that the deed restriction was in effect. The trial court, however, did not abuse its discretion by refusing to award damages to appellant. Appellant's evidence that it suffered lost profits from unsold units was too speculative in nature. Neither appellant nor the trial court could reasonably estimate how many units appellant could have sold, if it could have sold any, had the deed restriction not been in place. Furthermore, appellant did not introduce sufficient evidence to enable the trial court to reasonably conclude that appellant would continue to sell units at a thirty-seven percent markup. For these same reasons, we do not believe the trial court erred in refusing to grant appellant damages for lost goodwill either.

In summary, appellant did not demonstrate with sufficient certainty that it would have made additional profits from other work during the eleven months the deed restriction was in place, and the trial court did not err in refusing to grant damages for lost profits. However, this cause of action must be remanded to the trial court for a determination of damages appellant is entitled to because it was denied the use of its equity invested in the Sherwood unit for eleven months. Therefore, appellant's second assignment of error is sustained in part and overruled in part.

Appellant asserts in its third assignment of error that the trial court erred in denying damages for the time appellant's employees spent dealing with problems caused by the deed restriction. We disagree.

■■■ As part of compensatory damages, a party injured by a breach of contract is entitled to recover indirect costs incurred because of that breach if such costs can be proven with sufficient specificity. The Second District Court of Appeals has held that one such indirect cost is an overhead expense, *i.e.*, expense the innocent party incurs because it must expend resources as a result of the breach that it would otherwise be able to direct toward its normal line of business. *S & D Mech. Contrs., Inc. v. Enting Water Conditioning Sys., Inc.* (1991), 71 Ohio App.3d 228, 240, 593 N.E.2d 354, 362.[1] The court cited *Cincinnati Bell, Inc. v. Hinterlong* (1981), 70 Ohio Misc. 38, 44, 24 O.O.3d 52, 56, 437 N.E.2d 11, 15, for the following proposition:

" ' * * *[M]erely because the Plaintiff utilized materials and services within its own corporate structure, it does not follow that such services and materials are without value, or have a lesser value than if supplied by an outside independent contractor. Assuredly it is not this court's intention, nor the intention of the law in Ohio to eliminate overhead expenses and profit from repairmen engaged in repairing damage occasioned by the wrongful conduct of a third party.' " *S & D Mech. Contrs.,* 71 Ohio App.3d at 240, 593 N.E.2d at 362.

■■■ Under certain circumstances an award of damages based on overhead expenses may be appropriate, but we now hold that the trial court did not abuse its discretion in denying appellant such damages in this case. The trial court determined that appellant did not prove damages of overhead costs by competent and accurate evidence. Appellant did not submit any contemporaneous business records or detailed breakdowns. Appellant simply submitted documents which were created after the fact by employees who testified the documents were only estimates of the work performed and which were prepared specifically for litigation. The trial court was in the best position to weigh the evidence, and after a thorough review of the record including the transcript and appellant's

---

1. Appellee disagrees with the court in *S & D Mech. Contrs.* In appellee's brief before this court, appellee states:

"As previously noted by appellee at the trial court level, *S & D* simply and completely amounts to an incorrect application of the law. The Court of Appeals of the Second District issued its ruling in reliance upon the case of *Cincinnati Bell, Inc. v. Hinterlong*, a tort action. The court of appeals is wrong, and there is no question of this. You cannot apply a tort measurement of damages to a contract action. Any school boy knows this, although the Court of Appeals of the Second District apparently was absent that day."

Appellee cites "Hornbook law" as his only authority for the proposition that a court may not apply a "tort measurement of damages" to a contract action. We find appellee's argument on this point unpersuasive.

exhibits, we conclude that the trial court did not abuse its discretion in denying appellant damages for the time its employees expended because of the deed restriction. Appellant's third assignment of error is overruled.

Appellant asserts as its fourth assignment of error that the trial court erred when it denied appellant damages for legal fees appellant expended in an attempt to remove the deed restriction. Usually parties are responsible for their own attorney fees incurred as a result of litigation, but the recovery of attorney fees is not precluded in all circumstances. *S & D Mech. Contrs., supra,* 71 Ohio App.3d at 241, 593 N.E.2d at 363. Legal fees may be recovered if the trier of fact determines that the fees are the legal consequences of the original wrongful act. The trial court determined, however, that it was not necessary to hire independent counsel to clear the cloud over the title, when appellee's counsel had already filed suit and was in the process of preparing for trial. We do not believe the trial court abused its discretion in finding appellant failed to show a necessity for employing its own attorney; therefore, appellant was not entitled to damages for attorney fees. Appellant's fourth assignment of error is overruled.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

JONES, P.J., and KOEHLER, J., concur.