OPINION
Appellee, Factory Industrial Maintenance Company, is a company specializing in industrial cleaning and maintenance. In March of 1996, appellee entered into a "Master Service Agreement" with the Timken Company to provide cleaning and maintenance services. In late 1996, the Timken Company asked appellee to haul away wet scale from a scale pit located at the Harrison Road plant.[1] Appellee determined it would need a watertight bed dump truck to haul the wet scale to prevent leakage.
On January 31, 1997, appellee's president, Carl Talarico, entered into an agreement with appellant, LaPine Truck Sales Equipment Company, for the purchase of a 1990 Ford LTA 9000 dump truck for the total amount of $42,225. Under the terms of the agreement, the truck was to be delivered in two weeks. While waiting for the dump truck, appellee hauled wet scale from the pit, using a subcontracted trucking service. Two weeks went by and the dump truck was not ready. Appellee continued to use the subcontracted trucking service, but the trucks were inadequate and the Timken Company was dissatisfied. Shortly thereafter, the Timken Company told appellee it had decided to handle the wet scale problem internally.
In March of 1997, Mr. Talarico went to pick up the dump truck which was located at Canton Auto Spring Company. Upon inspection, Mr. Talarico determined the dump truck did not meet the required specifications. As a result, Mr. Talarico did not take possession of the truck. Appellant, however, had been paid in full. A certificate of title was filed with the Stark County Clerk of Court on March 27, 1997, putting ownership of the dump truck into appellee's name.
On March 25, 1997, appellee sent a letter to appellant seeking recission of the purchase agreement. On December 22, 1999, appellee filed a complaint against appellant seeking recission of the purchase agreement and damages due to lost profits.[2]
A jury trial commenced on January 22, 2001. The jury found in favor of appellee in the amount of $112,000. A judgment entry on the verdict was filed on January 25, 2001.
On January 29, 2001, appellant filed a motion for judgment notwithstanding the verdict or for new trial or for remittitur. By judgment entry filed February 6, 2001, the trial court denied said motion.
Also on January 29, 2001, appellee filed a motion for prejudgment interest. By judgment entry filed February 20, 2001, the trial court granted appellee prejudgment interest on $42,225.00 from March 25, 1997 and thereafter at a rate of ten percent per annum.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE JURY VERDICT AND JUDGMENT ENTRY AWARDING PLAINTIFF LOST PROFITS OF $70,000 WERE ERRONEOUS AND EXCESSIVE.
 THE JUDGMENT AS TO LOST PROFITS OF $70,000 IS NOT SUSTAINED BY THE WEIGHT OF THE EVIDENCE.
THE JUDGMENT AS TO LOST PROFITS IS CONTRARY TO LAW.
 THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR REMITTITUR.
 II THE JURY VERDICT AND THE JUDGMENT ENTRY AWARDING PLAINTIFF $112,000 WERE ERRONEOUS AND EXCESSIVE AS PLAINTIFF FAILED TO MITIGATE ITS DAMAGES.
 THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR REMITTITUR.
 III PLAINTIFF'S PURPORTED NOTICE OF REJECTION WAS NOT TIMELY NOR ADEQUATE AS REQUIRED UNDER R.C. § 1302.61 AND § 1302.63.
 IV THE TRIAL COURT ERRED IN AWARDING PREJUDGMENT INTEREST ON THE SUM OF $42,225 FROM MARCH 25, 1997.
 I, II
Appellant claims the jury's verdict was against the manifest weight of the evidence and excessive, and the trial court erred in denying remittitur. Appellant challenges the total verdict amount of $112,000 and specifically its assumption that $70,000 of the verdict was for lost profits.[3]
A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v.Garson (1993), 66 Ohio St.3d 610. A denial of a motion for remittitur is not erroneous unless the award is so excessive as to appear to be the result of passion or prejudice on the part of the jury, or unless the amount awarded is against the manifest weight of the evidence. Litchfieldv. Morris (1985), 25 Ohio App.3d 42.
 LOST PROFITS
Appellant argues the evidence does not support an award for lost profits and a judgment for such is contrary to law.
The record is replete with evidence that a watertight bed was a necessary condition for the continuation of the contract with the Timken Company for the hauling of the wet scale. T. at 78, 83, 111, 168-170. The addendum to the purchase order (Defendant's Exhibit G) contained certain specifications needed to make the dump truck watertight. T. at 259-262. Appellant was aware the specifications were a condition precedent to the sale. T. at 254. There is no evidence in the record to establish that the dump truck was watertight. Mr. Talarico testified that when he went to Canton Auto Spring to pick up the dump truck, he personally inspected the truck and discovered the bed was leaking. T. at 126-127.
It was the clear purpose of the Timken Company to afford appellee the opportunity to haul the wet scale if it could be done in an environmentally safe manner. T. at 77-81. For approximately two months, the Timken Company permitted appellee to use a subcontracted trucking service while waiting for the dump truck. T. at 80-81. However, the subcontracted trucks were inadequate. T. at 81-82, 174. As a result of appellee not having a watertight truck, the Timken Company re-evaluated the problem and decided to haul the wet scale internally. T. at 83, 86-87, 98, 177.
Appellant argues the Timken Company terminated appellee's "Master Service Agreement" in January of 1998 so appellee had no damages other than those that were speculative in nature. We disagree with this argument based upon the testimony given by Randall Parr. Mr. Parr, appellee's on-site employee at the Timken Company, calculated that on an average daily operational cost of $22.31 per hour on a charging rate of $45.00 per hour, the monthly profit would be $4,726.78 or $5,803.10. T. at 196, 223. The amount for twelve months (the length of time appellee was operating under the Master Service Agreement) equals $56,721.36 or $69,637.20. Given the testimony of Fredrick Geraghty, a unit manager for the Timken Company, that the hauling job was appellee's until appellee failed to provide a watertight truck in a timely matter (T. at 87), we find the claimed losses not to be speculative. A reasonable trier of fact could conclude there was a loss of profit attributable to appellant's noncompliance with the purchase agreement.
Appellant also argues there was no proof as a matter of law of lost profits. In support of this argument, appellant cites the case of CharlesR. Combs Trucking, Inc. v. International Harvester Company (1984),12 Ohio St.3d 241, which sets forth the following three prong test for the recovery of lost profits at paragraph two of the syllabus:
 Lost profits may be recovered by the plaintiff in a breach of contract action if: (1) profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits is the probable result of the breach of contract, and (3) the profits are not remote and speculative and may be shown with reasonable certainty.
From the evidence presented, it is clear appellant knew that the dump truck needed to be watertight for its required use and that timely delivery was required. T. at 110-113, 254, 259-266.[4] Appellee's loss of the Timken Company wet scale hauling job was a result of appellee's subcontractor having inadequate equipment and appellee's failure to have a watertight truck. T. at 176-177. From the testimony presented, we find the requirements of Combs have been satisfied.
 TOTAL VERDICT
Appellant argues the amount of $112,000 in damages was erroneous because appellee failed to mitigate its damages. Appellant argues the trial court should have granted remittitur.
Mitigation of damages is defined as follows:
As stated in Williston on Contracts:
 `The plaintiff's right is to recover such damages as the defendant's wrong necessarily caused him. It is usually said that the plaintiff is under a duty to mitigate damages. However, the truth seems rather to be that damages which the plaintiff might have avoided with reasonable effort without undue risk, expense, or humiliation are either not caused by the defendant's wrong or need not have been, and, therefore, are not to be charged against him.' 11 Williston on Contracts (3 Ed. 1968), Section 1353, at page 274. See, also, F. Enterprises v. Kentucky Fried Chicken Corp. (1976), 47 Ohio St.2d 154, 351 N.E.2d 121; 5 Corbin on Contracts (1964), Section 1039.
 Chandler v. General Motors Acceptance Corporation
(1980), 68 Ohio App.2d 30, 32.
While it is true that appellant did offer a substitute loaner truck while the subject truck was being brought up to specification, appellant was unable to timely deliver the subject truck. T. at 133, 306. Appellee hired a subcontractor to do the hauling, but as noted supra, that company had inadequate equipment and could not meet the Timken Company's requirements. Mr. Geraghty testified it became a joke that everyone was waiting on the truck. T. at 101. Appellant argues appellee should have found another truck or offered to sell the Timken Company the subject truck. It must first be understood that because of the over five week delay, the hauling job was lost to appellee and secondly, the evidence established the subject truck was not watertight. Given the circumstances, we fail to find that appellant had any ability to mitigate its losses.
 Assignments of Error I and II are denied. III
Appellant claims appellee's March 25, 1997 notice of rejection was not timely nor adequate under R.C. 1302.61 and 1302.63. We disagree.
Said sections state as follows:
§ 1302.61 Manner and effect of rightful rejection.
 Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.
 § 1302.63 Waiver of buyer's objections by failure to particularize.
 The buyer's failure to state in connection with rejection a particular defect which is ascertainable by reasonable inspection precludes him from relying on the unstated defect to justify rejection or to establish breach:
 where the seller could have cured it if stated seasonably; or
 between merchants when the seller has after rejection made a request in writing for a full and final written statement of all defects on which the buyer proposes to rely.
The purchase agreement for the dump truck noted the order date was January 31, 1997. T. at 255-256; Defendant's Exhibit F. The truck was to be delivered in two weeks. T. at 266. After two weeks, Mr. Talarico contacted appellant and asked if the truck was ready. T. at 114. Mr. Talarico was told "we're working on it." T. at 120. On February 20, 1997, Mr. Talarico observed the truck in pieces at Canton Auto Spring where the truck had gone for additional work. T. at 121. The truck was never actually delivered to appellee, but appellee was given a release on March 12, 1997 to pick the truck up from Canton Auto Spring. T. at 121, 125, 294. When Mr. Talarico went to pick up the dump truck, he discovered it was "lopsided" and "the tailgate is leaking." T. at 126-127. Mr. Talarico did not accept the truck. T. at 127. Thirteen days after this authorization and purported "delivery," appellee had its attorney issue a letter rejecting the truck. T. at 127-128; Plaintiff's Exhibit 12. Said letter stated the following in pertinent part:
 It is my understanding that you have had several telephone conversations with Carl Talarico, President of FIMCO, concerning the delays on delivery of the subject truck and the subsequent problems resulting from these delays.
 The deposit receipt in the amount of Four Thousand Dollar ($4,000) clearly indicated that time was of the essence and that the truck must be delivered within two (2) weeks of the date of that receipt. On Friday, March 14th, 1997, the date FIMCO was to take delivery of the subject truck, said truck was still not ready. As a result of these delays in delivery, FIMCO's customer has since canceled its contract for which this truck was to have been applied.
 I am hereby demanding full refund of all monies paid to LaPine Trucking by FIMCO in connection with this equipment purchase, which monies include the taxes paid.
Given the evidence presented, we find the rejection of goods was timely and adequately made.
Assignment of Error III is denied.
 IV
Appellant claims the trial court erred in granting prejudgment interest. We disagree.
R.C. 1343.03 governs the rate of interest on contracts, book accounts and judgments. Subsection (A) states the following:
 Except as provided in division (C)(2) of this section, in cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, except that, if a written contract provides a different rate of interest in relation to the money that becomes due and payable, the creditor is entitled to interest at the rate provided in that contract.
The jury determined there was a breach of contract. The question then is "When is the debt due and payable?" Pursuant to R.C. 1302.85(A), upon rightful rejection, the buyer is entitled to the purchase price paid. Therefore, on March 25, 1997, the purchase price of $42,225 was due back to appellee and ten percent interest commenced from said date. We fail to find any requirement in R.C. 1343.03(A) that the question be determined by a jury.
Assignment of Error IV is denied.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
Hon. W. Scott Gwin, P.J. Hon. Sheila G. Farmer, J. Hon. John W. Wise, J. concur.
[1] As hot steel cools, scaling forms and falls off into a scale pit.
[2] Appellee filed a similar complaint on March 18, 1998, but voluntarily dismissed it on April 16, 1999.
[3] There was only a general verdict on damages with no specific interrogatories separating the cost of the dump truck and lost profits. Because the truck cost $42,000, the parties surmise $70,000 to constitute lost profits.
[4] It is interesting to note that at the time that Mr. Talarico picked out the subject dump truck, it was not titled to appellant. T. at 310.