JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff Targetronix, a distributer of electronic components, contracted with defendant Flextronics International USA, Inc. to deliver electronic components. When Flextronics discovered that Targetronix had marked up the price by well over three hundred percent, it cancelled the order. Targetronix claimed the cancellation violated the terms of the purchase order and brought this suit to recover the contract price as well as the fee charged by its supplier to return the components. On summary judgment, the court awarded Targetronix a restocking fee and freight charges, but denied it recovery on the full contract price. Targetronix appeals.
 {¶ 2} Unless ambiguous or otherwise in need of factual construction, contracts are interpreted as a matter of law. Alexander v.Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus; Long Beach Ass'n. v. Jones (1998), 82 Ohio St.3d 574, 577,1998-Ohio-186. And because we interpret contracts as a matter of law, the resolution of contract disputes is particularly amenable to summary judgment, where the court issues summary judgment as a matter of law. See Civ.R. 56.
 {¶ 3} The parties filed cross-motions for summary judgment asking for a determination as a matter of law, so there is no real dispute as to the facts. A Flextronics purchase order contained the terms of the agreement. On October 17, 2000, Targetronix agreed to sell, and Flextronics agreed to buy, 13,713 components for a price of $13.44 each. Flextronics needed the items right away, so the parties stipulated that time was of the essence. Nevertheless, Targetronix's supplier could not provide the components immediately. The purchase order stated a delivery date of February 6, 2001 because the manufacturer of the components quoted Targetronix a sixteen-week lead time on delivery.
 {¶ 4} The purchase order contained a sheet titled "standard terms and conditions of purchase." A heading named "DELIVERY" stated that "Flextronics may, at it's [sic.] option, decline to accept goods and terminate the balance of this order." Another heading named "TERMINATION" stated:
 {¶ 5} "Flextronics may terminate work under this purchase order in whole or in part at any time by notice to Seller in Writing. Seller will thereupon immediately stop work on this purchase order, or the terminated portion thereof, and notify its subcontractors to do likewise. Except for such termination as caused by default or delay of Seller, Seller shall be entitled to reimbursement for its actual costs incurred up to and including the date of the termination applicable to the termination and in acceptance with recognized accounting practices. Seller shall also be entitled to reasonable profit on the work done prior to such termination at a rate not exceeding the rate used in establishing the original purchase price. The total of such claims shall not exceed the cancelled commitment value of this purchase order."
 {¶ 6} On October 24, 2000, Flextronics called Targetronix and cancelled the order because its customer, Cisco Systems, refused to pay the price set by Targetronix. A Targetronix sales person spoke with a Flextronics representative and informed him that because Targetronix did not stock the particular electronic component, it would charge 100% of the contract price. The sales person later conceded that she did not know for a fact that Targetronix's supplier would charge a cancellation fee. Flextronics said that it would get back to Targetronix. In an e-mail dated November 29, 2000, Flextronics stated:
 {¶ 7} "We will accept your shipment of 75 pcs ahead of agreed schedule date of 02-06-01 but the remaining balance of 13303 has been cancelled. Please refer to the Flex purchase order's Terms and Conditions. We are within our limit of cancellation time. We did not sign any NCNR forms and your price of $13.44 is above far exceeds the Contract Price with CISCO."
 {¶ 8} The "NCNR" referred to non-cancelable/non-returnable.
 {¶ 9} Targetronix called its supplier on December 1, 2000 and asked that the order be cancelled. The supplier told Targetronix that the components were not scheduled to be shipped for another thirty days. Flextronics maintained that the Targetronix purchasing agent said she called to "expedite" delivery after learning of the cancellation. Exhibit F attached to Flextronics' motion for summary judgment is a Targetronix internal memorandum supplied to its sale staff which details the procedure for "expediting orders." Paragraph 5 of the memorandum states "Expedite long lead-time orders (i.e., 14-24 weeks) two to four weeks before the promised delivery date, NOT BEFORE." Paragraph 6 of the memorandum states "Have orders expedited when requested by customers, if necessary."
 {¶ 10} The purchasing agent explained that "expediting with us is the same as checking status. Or to me it is the same." Targetronix's president confirmed that he held the same understanding of the term "expedite" as did the purchasing agent. He also said that he was unaware of anyone in Targetronix asking its supplier to speed delivery of the components.
 {¶ 11} To the extent that the use of the word "expedite" is an issue of fact, Targetronix, as the party opposing summary judgment, is entitled to have the facts interpreted most favorably in its favor; therefore, we construe the term "expedited" as suggested by the purchasing agent.
 {¶ 12} Targetronix returned the components to its supplier, and the supplier charged Targetronix a twenty-five percent restocking charge of $11,473.84 for the return.
 {¶ 13} Flextronics' cancellation of the contract was a breach and the sole question is the remedy afforded to Targetronix. The parties do not question the propriety of the court's decision to award the restocking fee — these incidental damages suffered by Targetronix for returning the components were a proper element of damages resulting from the breach. The sole issue is whether Targetronix was entitled to its lost profits on the bargain.
 {¶ 14} As a general principle, damage awards in contract actions should put the injured party in as good a position as full performance of the contract would have done. F. Enterprises v. Kentucky Fried ChickenCorp. (1976), 47 Ohio St.2d 154, 161; Ed Stinn Chevrolet, Inc. v. Natl.City Bank (1986), 28 Ohio St.3d 221, 233. Hence, a party who is liable for breach of contract may also be liable for lost profits resulting from the breach. See Kinetico, Inc. v. Independent Ohio Nail Co. (1984),19 Ohio App.3d 26, 30. Lost profits are generally recoverable if: (1) such profits were within the contemplation of the parties at the time the contract was made; (2) the loss was the probable result of the breach; and (3) the profits are not remote and speculative. Charles R. CombsTrucking, Inc. v. International Harvester Co. (1984), 12 Ohio St.3d 241, paragraph two of the syllabus. The amount of the lost profits, as well as their existence, must be proven with reasonable certainty. Gahanna v.Eastgate Properties, Inc. (1988), 36 Ohio St.3d 65, syllabus.
 {¶ 15} However, the parties are always free to define their course of dealing and may freely contract to limit them in the event of a breach. Although the Uniform Commercial Code permits parties to limit the remedies available in the event of a breach (e.g., by precluding the recovery of consequential damages), it does require that there at least be a minimum adequate remedy for the victim of a breach. See R.C. 1302.92
[U.C.C. Section 2-719], comment 1.
 {¶ 16} While the purchase agreement provided that Flextronics could terminate work under the purchase order, that termination provision did not absolve it of the obligation to pay damages for lost profits in the event of a termination. The purchase agreement provided that Targetronix would be entitled to "reasonable profit on the work done prior to such termination at a rate not exceeding the rate used in establishing the original purchase price."
 {¶ 17} Flextronics notified Targetronix in writing on November 30, 2001, that it was cancelling the purchase order. The quoted terms of the purchase order made Flextronics liable for all lost profits "on work done" prior to the termination. The question is what constitutes "work done" at the point of termination.
 {¶ 18} It is important to note that Targetronix relied on a supplier for the needed electronic components. Because those components were not available — in fact they had not been manufactured by the supplier — the "work" on the contract had not been completed. As of the moment Targetronix received the written notice of cancellation, the components were not available for shipment so Targetronix still had to perform under the contract. Ordering the components was only half of Targetronix's obligation — it still had to ensure delivery of those items to Flextronics and until those components were delivered, performance had not been complete.
 {¶ 19} It is true that Targetronix's order with its supplier may have entailed a different set of terms that opened it up to liability based upon Flextronics' termination of the purchase agreement, but the contract between Targetronix and Flextronics made no provision for that situation. Because the terms of the contract clearly limited Flextronics' liability for lost profit only to "work performed" under the contract, it could not, as a matter of law, be liable for lost profits on items that had not shipped as of the date of the termination. It follows that the court did not err by granting summary judgment.
Judgment affirmed.
PATRICIA ANN BLACKMON, J., and JAMES J. SWEENEY, J., concur.