OPINION
Turk Professional Services, Inc. ("TPS"), fourth-party plaintiff-appellant, appeals from the decision of the Cuyahoga County Court of Common Pleas which directed the verdict in favor of Nationwide Insurance Inc. ("Nationwide") and Jack Stanton ("Stanton"), fourth-party defendants-appellees, and alleges multiple errors of the trial court were prejudicial to its claims against appellees. For the reasons adduced below, we affirm in part and reverse in part.
The facts giving rise to this appeal are as follows. On May 15, 1994, TPS, a funeral escort and removal service, was contacted by Strowder's Funeral Chapel to recover the bodies of two deceased elderly women for burial preparation. TPS delivered the bodies to Strowder's where they remained without identification. Strowder prepared both bodies for burial and on May 18, 1994 the body of Dorothy Washington was buried during the conduct of the Mary An Wheat funeral. The next day, the family of Dorothy Washington, upon viewing the body at the funeral home in advance of her funeral service, determined that the deceased woman in the coffin was not their wife and mother, Dorothy Washington. Subsequently, the body of Dorothy Washington was exhumed, prepared for burial and buried on May 20th.
As a result of these events, on December 7, 1994, the family of Dorothy Washington initiated the underlying action and asserted claims for breach of contract, breach of warranties and negligence against Strowder's Funeral Chapel, Inc. and Edward Strowder (collectively, "Strowder"). On January 24, 1995, Strowder filed a third-party complaint by which it asserted a claim of negligence against TPS and advanced a claim for indemnification. The Washington family amended its original complaint to include direct claims against TPS. TPS notified its insurer Nationwide Insurance Co. of the claims asserted against it. By letter on February 22, 1995, Nationwide advised Terry Turk, president of TPS, that Nationwide declined to provide both coverage and defense to its insured, TPS, for these claims and advised TPS to secure its own counsel. On March 3, 1995, Turk retained counsel to defend TPS on the complaint "originating from a mental anguish action" against it. Thereafter, on April 18, 1995, TPS initiated a fourth-party complaint against Nationwide and its agent Jack Stanton Insurance Agency, Inc. advancing a claim for indemnification, expenses and damages; asserting a claim of breach of contract against Nationwide; alleging negligent, grossly reckless, false and fraudulent representations by Jack Stanton as Nationwide's agent; and, requesting punitive damages. On June 20, 1995, the fourth-party defendants jointly answered TPS' complaint.
Hearing was held on July 23, 1996, on the TPS' fourth-party complaint against Nationwide and Jack Stanton Agency. By journal entry on August 8, 1996, the trial court ruled that the issue sounded in declaratory judgment and then determined that the policy provisions required a "duty" to defend and declared that Nationwide was entitled to defend the case with its own counsel. The court's entry further found TPS was entitled to reasonable attorney's fees incurred. On November 25, 1996, by letter to TPS, Nationwide confirmed its offer of $20,000 to settle TPS' claim for attorneys fees. TPS rejected this offer.
The case was bifurcated for trial with the Washington family's underlying action set for March 18, 1997 trial and TPS' fourth-party action set for May 27, 1997 trial. However, on March 18th, prior to trial, the parties to the underlying action, the Washington family, Strowder and TPS (as represented by Nationwide pursuant to the order of the court), reached a settlement and entered into a stipulation for dismissal of the complaint and third-party complaint which was journalized on March 19, 1997. The fourth-party action was advanced for April 24, 1997 trial.
On April 14, 1997, TPS requested the court to relieve any operation and effect of the March 19th settlement agreement as to TPS and moved the court for relief from judgment pursuant to Civ.R. 60(B)(3) and (5). The motion was denied by the trial court on April 24, 1997. Then, in preparation for trial, TPS caused subpoenae to be issued for James Washington and Shirley Morgan, non-parties to the fourth-party complaint. These subpoenae were quashed by the court on April 23rd. A second subpoena was issued for Shirley Morgan to appear at trial. This second subpoena was quashed upon motion by counsel for Shirley Morgan during the course of trial.
On April 25, 1997, jury trial commenced. At trial, TPS presented testimony of nine witnesses to support its asserted claims for indemnification, breach of contract and fraud.
First, Al Rhoa, Esq., testified that on February 20, 1995 Nationwide retained him to obtain leave to plead in the underlying matter in order to protect TPS' interest and prevent a default judgment from being taken against TPS until it could obtain its own counsel. Rhoa requested the leave and notified Turk by both phone and letter that Nationwide would not provide coverage and that a responsive pleading was due no later than March 21, 1995. Rhoa placed follow-up phone calls to Turk to be assured that Turk had engaged counsel for TPS.
Next, Edward Strowder of the Strowder Funeral Chapel described the events surrounding the underlying case brought by the Washington family against both the funeral home and TPS. He said that in the course of his business he routinely hired TPS to transport bodies. TPS transported the bodies which were involved in the misidentification which occurred and led to the underlying lawsuit. Strowder alleged the actions of TPS contributed to the mixup.
Anthony Palmieri, a competitor of TPS in the business of transporting human remains, testified that he had referred Turk to Nationwide for auto and liability insurance coverage through Jack Stanton because Stanton had previously provided Palmieri with insurance for his business.
Jack Stanton was called to testify as if on cross-examination. Stanton, an exclusive agent for Nationwide, said that Turk called him after a referral by Palmieri. Stanton was aware that Turk relied upon him to determine the type of insurance needed for the body delivery service. Stanton advised Turk regarding coverage and procured a $100,000 commercial liability insurance policy for TPS' business. Although Stanton did not tell Turk that the policy would protect TPS from defense costs in the event it incurred a lawsuit in the ordinary course of business, Stanton did explain what operations of the business a general liability policy would protect. As an example of the coverage protection provided, Stanton said if Turk dropped a body and caused damage to it, the damage was covered. Stanton testified that the liability policy covered "personal injury" in four areas: libel, slander, false arrest, and wilful eviction; and, Stanton noted that the policy further covered "bodily injury" and property damage. The liability policy which Stanton recommended was an improvement over what Turk thought was needed and it offered TPS more coverage than that for which Turk initially sought. Turk originally requested only automobile insurance insisting that TPS was simply a "livery service." Stanton admitted he did not explain fine print exclusions nor did he complete the bold print standard exclusion endorsement form. Stanton conceded that the standard exclusion form should be completed with the policy number and the description of professional services and he was unable to justify such nondisclosure.
On direct examination, Stanton said he had no intention to deceive Turk during the period of time in which he sold TPS the policy. Moreover, at first, he honestly felt that TPS had coverage under the policy; however, since the complaint sounded in mental anguish and such mental injury constitutes a "personal injury" only covered when it arises out of certain offenses which this case did not involve, then Stanton conceded that no coverage existed. Turk did not ask for mental anguish coverage when he applied for insurance for TPS.
Tracy Geon, Nationwide master claims representative, testified as if on cross-examination. Geon's role was to conduct the initial review of the complaint and ascertain the facts from the policy-holder in order to determine whether anything in the complaint would trigger coverage under the policy. Upon review, she determined that the TPS' policy coverage was not intended for the circumstances of the law suit as presented because no allegation of bodily injury existed in the complaint. She determined that all injuries in the complaint alleged mental anguish and, under this policy, there was no authority for Nationwide to extend a defense. Further, she determined that the incident did not fall within any definition of a "personal injury" claim. In her analysis of coverage issues, Geon applies the professional exclusion form to a policy where the form is attached even if the attached form is blank. Geon believed that Nationwide dealt fairly with the insured. In her opinion, with the facts of the case as known, even after the case settled, there would be no coverage within the TPS policy for the underlying mental. anguish claims.
David Hartsock, Nationwide Claims Legal Counsel, appeared pursuant to subpoena and testified as if on cross-examination. Hartsock stated that Nationwide would not consider a claim of serious emotional distress as a claim for "bodily injury" asserting that, in Ohio, for a claim for emotional distress to be considered bodily injury the emotional distress must be accompanied by a contemporaneous physical injury.
Arthur Woods, former employee of TPS, testified as to his involvement in the events surrounding the underlying incident. He and Turk picked up the deceased women at their respective homes. Woods, alone, took both bodies to Strowder Funeral Chapel. He got a key to unlock the morgue and there he placed one decedent on the morgue table and placed the other decedent on a cot inside the little hallway. No identifying tags were available so he verbally identified the bodies to an employee who was there. Later in the day he received a call from Turk asking him how he had placed the bodies. He told Turk which body he left on the table and which one was on the cot.
Terry Turk testified on behalf of TPS. He said he incorporated the funeral escort and removal company as Turk professional Services, Inc. in 1992. He sought insurance coverage through Jack Stanton Insurance Agency upon a referral from Palmieri because some funeral homes require commercial insurance. He said Stanton described TPS' need for liability insurance by citing examples of coverage for incidents including the dropping of a body, or a body flying out of the car, or breaking a vase in someone's house. He and Stanton did not discuss the situation of what the next of kin of the decedent might do if they saw him drop the body. Stanton advised him that with the recommended liability policy TPS would be covered in the ordinary course of its business and he indicated that TPS would be "fully insured." Therefore, when TPS was sued Turk turned the matter over to Stanton's office. However, a week or two later he heard from both attorney Rhoa and Nationwide's Tracy Geon who each informed him that no coverage existed for the matter and advised him to retain his own attorney. He received a letter from Geon confirming Nationwide's denial of coverage. He said Stanton believed the denial of coverage must be a mistake. However, the following week, he was informed by Stanton that although he didn't know what went wrong. Stanton was "sorry" that there was no coverage. The situation made him very nervous because he had very little money for attorney fees and he feared the business would be bankrupt and its reputation ruined. He retained Lawrence Kaigler, Esq., to represent TPS. Kaigler required a retainer of three thousand dollars and charged one hundred dollars an hour. He met many times and had many phone conversations with the attorney. Currently, TPS' bill is $184,150 for attorneys fees with $909.75 additional expenses incurred by counsel.
On cross-examination, Turk conceded that he had no information that would lead him to believe that Jack Stanton intentionally misled him on the issues of insurance coverage. Turk acknowledged that in 1996, during the course of the lawsuit, he was aware that Nationwide had offered to defend TPS and provide insurance coverage, but he did not consider that "good news" and turned down Nationwide's offer. Turk understood that Nationwide settled the claims of the Washington family for fifteen thousand dollars and knew that he did not have to pay anything toward the settlement out of his own pocket. Turk said that it was his understanding that the legal bills would be "awfully" high.
In response to questioning by the court, Turk said he believed that whether the legal fees were one hundred and eighty-four thousand dollars, half of a million dollars, or two million dollars, Nationwide would have to pay them. He did not recall the attorney ever advising him as to a settlement of the claims against Nationwide or what it might cost TPS to get out of the problem instead of incurring higher legal fees.
The court next heard the argument of Marvin Melamed, attorney representing Shirley Morgan, in support of the motion to quash the subpoena issued to Ms. Morgan. Melamed asserted that Ms. Morgan had no evidence to either support or deny the allegations of the fourth-party complaint, and further noted that the prior subpoena issued had been quashed by the trial court. The trial court found that since the original complaint gave no notice of "bodily injury" the evidence intended to be elicited by Ms. Morgan's testimony was irrelevant to this case and, over objection, granted the motion to quash the second subpoena of Ms. Morgan.
Finally, James L. Hardiman, Esq., testified as a member in good standing of the Ohio Bar, that in his expert opinion the customary fee charged locally for legal service is between one hundred and two hundred dollars per hour. Hardiman opined that one hundred dollars per hour for services of counsel for this type of legal work is reasonable. On cross-examination, Hardiman conceded that he had not reviewed either counsel's file or the court file. Counsel for Nationwide stipulated that one hundred dollars per hour was "reasonable."
At the close of appellant's case, appellees Nationwide and Stanton moved the court to direct the verdict in their favor on each claim advanced by TPS. The trial court found the first two counts, dealing with indemnification and the breach of contract, to have been rendered moot by the declaratory judgment rendered August 8, 1996, except with respect to damages. On the third count by which TPS alleged fraud, the trial court found no evidence of intentional failure to disclose information and no evidence of false representation of fact made with knowledge of falsity or with utter disregard or recklessness about its falsity was presented. Further, the court concluded that where there is no evidence of fraud to go to the jury, there is no clear and convincing evidence supporting the allegation of punitive damages. Finally, finding that no evidence was presented on the "reasonableness" of attorney's fees, the trial court dismissed the claim for fees with respect to counts one and two.
On April 29, 1997, the trial court journalized its grant of appellees' motion for directed verdict and entered judgment in appellees favor on all claims against them. TPS timely appealed the judgment of the trial court and advanced seventeen assignments of error for our review. Subsequently, during the pendency of this appeal, TPS deleted five of its assigned errors. Then, this court, on July 28, 1998, granted appellant's motion for leave to obtain new counsel filed with TPS' notice of release of counsel. No notice of appearance of new counsel was filed. Twelve assignments of error remain for our review.
 I. THE TRIAL COURT ERRED WHEN IT RULED THAT NATIONWIDE INSURANCE COULD DEFEND WITH ITS OWN COUNSEL.
II. * * *
III. * * *
IV. * * *
 V. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANTS' RULE 60 B(3) (5 OHIO CONSTITUTIONAL QUESTION, ETC.) MOTION FOR RELIEF FROM JUDGMENT.
 VI. THE TRIAL COURT ERRED WHEN IT QUASHED APPELLANTS' SUBPOENA OF SHIRLEY MORGAN AND JAMES WASHINGTON.
 VII. THE TRIAL COURT ERRED WHEN IT PERMITTED EVIDENCE OF SETTLEMENT BETWEEN FOURTH PARTY DEFENDANTS AND PLAINTIFFS.
VIII. * * *
IX. * * *
 X. THE TRIAL COURT ERRED WHEN IT GRANTED FOURTH PARTY DEFENDANTS' MOTION FOR DIRECTED VERDICT AS TO THE ISSUE OF BREECH [sic] OF CONTRACT.
 XI. THE TRIAL COURT ERRED WHEN IT GRANTED FOURTH PARTY DEFENDANTS' MOTION FOR DIRECTED VERDICT AS TO THE ISSUE OF COMPENSATORY DAMAGES.
 XII. THE TRIAL COURT ERRED WHEN IT GRANTED FOURTH PARTY DEFENDANTS' MOTION FOR DIRECTED VERDICT AS TO THE ISSUE OF INDEMNITY.
 XIII. THE TRIAL COURT ERRED WHEN IT GRANTED FOURTH PARTY DEFENDANTS' MOTION FOR DIRECTED VERDICT AS TO THE ISSUE OF ATTORNEY FEES.
 XIV. THE TRIAL COURT ERRED WHEN IT GRANTED FOURTH PARTY DEFENDANTS' MOTION FOR DIRECTED VERDICT AS TO THE ISSUE OF MISREPRESENTATION.
 XV. THE TRIAL COURT ERRED WHEN IT GRANTED FOURTH PARTY DEFENDANTS' MOTION FOR DIRECTED VERDICT AS TO THE ISSUE OF FRAUD.
 XVI. THE TRIAL COURT ERRED WHEN IT GRANTED FOURTH PARTY DEFENDANTS' MOTION FOR DIRECTED VERDICT AS TO THE ISSUE OF BAD FAITH.
 XVII. THE TRIAL COURT ERRED WHEN IT GRANTED FOURTH PARTY DEFENDANTS' MOTION FOR DIRECTED VERDICT AS TO THE ISSUE OF PUNITIVE DAMAGES.
In its first assigned error, appellant challenges the determination entered by the trial court on August 8, 1996 which provided that Nationwide may defend the action brought against TPS with its own counsel. Appellant, in reliance on Sanderson v.Ohio Edison Co. (1994), 69 Ohio St.3d 582, asserts that this ruling of the trial court was made in error, alleging Nationwide voluntarily lost its contractual rights because it unjustifiably refused to defend the action. As a consequence, appellant complains that this ruling of the trial court creates an unconstitutional interference with its contract with counsel.
We find appellant's reliance on Sanderson to be misplaced. InSanderson, the court determined that "where an insurer unjustifiably refuses to defend an action, leaving the insureds to fend for themselves, the insureds are at liberty to make a reasonable settlement without prejudice to their rights under the contract. By abandoning the insureds to their own devices in resolving the suit, the insurer voluntarily forgoes the right to control the litigation and, consequently, will not be heard to complain concerning the resolution of the action in the absence of a showing of fraud, even if liability is conceded by the insureds as a part of settlement negotiations."
We find Sanderson to be distinguishable from the matter subjudice and not controlling here. It cannot be said that where Nationwide declined to defend TPS on the underlying case where the allegations of the complaint were not apparently within the policy coverage that Nationwide voluntarily "abandoned" its right to control the litigation. Here, Nationwide ultimately took over the defense of the action against its insured. TPS was not left abandoned to its own devices in resolving the suit. Nationwide settled the case within the policy limits thereby fully indemnifying TPS of all liability in the underlying matter. Under the circumstances here, the trial court was not required to apply the reasoning of the Sanderson court to find that Nationwide had "abandoned" TPS and as a consequence lost the right to control the litigation. Accordingly, we find appellant's first assignment of error to be without merit.
In assignment of error number five, appellant contends that because the requirements of GTE were met then the trial court erred when it denied appellant's motion for relief from judgment made pursuant to Civ.R. 60(B) without a hearing.
To prevail on a motion for relief from judgment the motion must be made within a reasonable time; the party must show that the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1)-(5) and that the party has a meritorious defense to present if relief is granted. GTE Automatic Electric,Inc. v. Arc Industries, (1976), 47 Ohio St.2d 146. Further, where grounds for relief from judgment are sufficiently alleged and are supported with evidence that would warrant relief from judgment, the trial court abuses its discretion if it fails to hold a hearing on the matter. Kay v. Marc Glassman, Inc. (1996), 76 Ohio St.3d 18,19-20; see, also, Brotherhood of Locomotive Engineersv. Dixon (July 23, 1998), Cuyahoga App. No. 72269, unreported.
Appellant contends the motion was timely made, it had a meritorious defense and it demonstrated that the attorney who entered into the settlement agreement was without authority to settle or compromise the claim.
Civ.R. 60(B) states in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from final judgment, order or proceeding for the following reasons * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party.
Pursuant to Civ.R. 60(B)(3), appellant claims that fraud and misconduct were demonstrated because Nationwide settled the case without the authority of TPS. To demonstrate fraud, one must show that a false representation of fact was made with knowledge of its falsity or with utter disregard or recklessness about its falsity that knowledge may be concluded or that there was a concealment of facts where there was a duty to disclose. Moreover, an injury must occur which was proximately caused by reliance on the false representation. Finally, an insurer is not required to gain the consent of the insured in agreeing to a settlement. Marginian v. Allstate Ins. Co., 18 Ohio St.3d 345. A careful review of the record before us demonstrates that neither fraud nor misconduct were shown by the evidence presented. Further, Nationwide was entitled to settle the case without the permission of the insured. Thus, in consideration of the law as stated and the facts in the record, appellant had not demonstrated fraud and would not be entitled to relief pursuant to Civ.R. 60(B)(3).
Civ.R. 60(B)(5) provides relief from judgment for "any other reason justifying relief."
Pursuant to Civ.R. 60(B)(5) appellant claims that Nationwide lacked the authority to enter into an agreement because the order authorizing Nationwide to use its own counsel is a nullity. Appellant contends that the order constituted an unconstitutional interference with its contract with retained counsel. However, appellant presented no evidence to demonstrate that this order of the trial court in any way interfered with its contract with counsel. Thus, it cannot be said that the order was unconstitutional. Moreover, the trial court's order authorized counsel for Nationwide to undertake the responsibilities on conformance with the contract of insurance. As a consequence, appellant's further contention that the stipulation for dismissal was not signed by TPS and therefore the stipulation failed to meet the requirements of Civ.R. 41 has no merit. The record demonstrates that the settlement reached was for the benefit of TPS, counsel acting on behalf of TPS and representing TPS' interests signed the agreement and no injury to TPS as a result of the settlement has been shown. Thus, appellant has failed to show that it is entitled to relief pursuant to Civ.R. 60(B)(5). Accordingly, the trial court did not err in its denial of appellant's motion for relief from judgment. Appellant's fifth assignment of error is without merit.
In assignments of error six and seven, appellant challenges rulings made by the trial court relating to evidentiary issues affecting the trial of TPS' fourth-party complaint against Nationwide and Stanton and asserts prejudice to its case. In assignment of error six, appellant contends that the trial court erred in quashing the subpoenae issued to Shirley Morgan and James Washington claiming their testimony would factually establish its breach of contract claim and bad faith issues. Specifically, TPS asserts that these witnesses would testify that "bodily injury" did occur. TPS contends that these facts were necessary to show Nationwide's liability pursuant to the policy. In assigned error numbered seven, appellant contends that the trial court erred in permitting evidence of the settlement into the trial over its objection. Specifically, appellant contends that notice of this settlement was prejudicial to its claims.
Evid.R. 402 provides:
 All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible.
A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice. Rigby v. LakeCty. (1991), 58 Ohio St.3d 269, 271. The words "abuse of discretion" mean that the trial court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. An error in an evidentiary ruling does not warrant reversal of the trial court's judgment unless the trial court's actions were inconsistent with substantial justice and affected the substantial rights of the parties. Evid.R. 103 and Civ.R. 61.
The record demonstrates that the trial court considered the potential testimony of these non-parties to the action and concluded that the proposed testimony was irrelevant to the matter. The proposed testimony went to appellant's breach of contract claim which the trial court determined was moot as a result of the prior declaratory action decision. As such, we find that no prejudice to appellant occurred and no abuse of discretion has been shown when the trial court quashed the subpoena of either James Washington or Shirley Morgan which thereby precluded their testimony at trial. Thus, we find assignment of error six to be without merit.
Moreover, appellant complains that the evidence of settlement was irrelevant to the issues as advanced in the fourth-party complaint and as such it was prejudicial error for the trial court to permit the settlement to be considered by the jury. Where, as here, the trial court directs the verdict, questions of fact are not considered by the jury, then no error prejudicial to appellant can be said to have occurred. Accordingly, we find appellant's seventh assignment of error to be without merit.
In assignments of error ten through seventeen, appellant challenges the trial court's grant of appellee Nationwide's motion for directed verdict.
The standard to be applied by a trial court in considering a motion for a directed verdict is set forth in Civ.R. 50(A)(4), which provides:
 When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
A motion for a directed verdict tests the legal sufficiency of the evidence, and therefore presents a question of law. Grau v.Kleinschmidt (1987). 31 Ohio St.3d 84, 90; see, also, Dimora v.Cleveland Clinic Found. (1996), 114 Ohio App.3d 711, 716. On a motion for directed verdict the trial court may not weigh the evidence nor test the credibility of the witnesses but must give to the party opposing the motion the benefit of all reasonable inferences from the evidence. Zavasnik v. Lyons Transp. Lines,Inc. (1996), 115 Ohio App.3d 374, 378; see, also, Strother v.Hutchinson (1981), 67 Ohio St.2d 282, 284. Moreover, where there is substantial competent evidence favoring the nonmoving party so that reasonable minds might reach different conclusions, the motion must be denied. Ramage v. Cent. Ohio Emergency Serv., Inc.
(1992), 64 Ohio St.3d 97, 109. See, also, Wagner v. RocheLaboratories (1996), 77 Ohio St.3d 116.
However, a directed verdict is appropriate where the party opposing it has failed to adduce any evidence on the essential elements of his claim. Cooper v. Grace Baptist Church (1992),81 Ohio App.3d 728, 734. Therefore, the issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury, and it constitutes a question of law, not one of fact. Vosgerichian v. Mancini Shah Associates,et al. (Feb. 29, 1996), Cuyahoga App. Nos. 68931 and 68943, unreported.
The standard of appellate review on a motion for directed verdict is de novo; this court is to construe the evidence presented most strongly in favor of the nonmoving party and, after so doing, determine whether reasonable minds could only reach a conclusion which is against the nonmoving party. TitaniumIndustries v. S.E.A. Inc., (1997), 118 Ohio App.3d 39, citingByrley v. Nationwide Ins. Co. (1994), 94 Ohio App.3d 1, cert.denied, 78 Ohio St.3d 1516. An appellate court does not weigh the evidence or test the credibility of the witnesses. Id. In considering the motion, this court "* * * assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence." Beckerv. Lake Cty. Mem. Hosp. West (1990), 53 Ohio St.3d 202, 206, quoting Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66,68.
In assignment of error ten, appellant contends that the trial court erred in granting a directed verdict on its breach of contract claim. Specifically, appellant complains that Nationwide admitted that it breached its contract during the declaratory action hearing. Moreover, appellant contends that Nationwide is estopped from denying mental anguish coverage where it held itself out as the indemnity carrier to TPS. Appellant insists that personal injury proviso includes coverage for mental distress and asserts that in this case an oral publication which violated a person's right to privacy occurred and that such a claim is covered within the policy.
The record demonstrates that although Nationwide offered both a defense and coverage, which TPS did not accept, Nationwide did not admit a breach of contract during the declaratory hearing on the issue. Even so, the trial court entered its ruling which indicated that Nationwide would provide coverage and found Nationwide had a "duty" to defend the action. The trial court further determined appellant was entitled to reasonable attorney's fees incurred. Thus, where the trial court has already determined that appellant is entitled to the damages which he could have won had he prevailed on a breach of contract claim, then it cannot be shown that directed verdict on the breach of contract claim was prejudicial to TPS. Accordingly, we find appellant's tenth assignment of error to be without merit.
In assignment of error number eleven, appellant contends that it was error for the trial court to direct a verdict on its claim for compensatory damage. Specifically, appellant contends that competent and credible evidence was presented to demonstrate compensable losses suffered by TPS resulting from Nationwide's denial of coverage. Further, TPS asserted Turk is entitled to damages caused by nervousness.
A fundamental rule of the law of damages is that the injured party shall be fully compensated. Adcock v. Rollins ProtectiveServices Co. (1981), 1 Ohio App.3d 160, 161. The correct measure of damage is the amount necessary to place the non-breaching party in the same position he would have been had the breaching party fully performed, the idea being to make the non-breaching party "whole." F. Enterprises Inc. v. Kentucky Fried ChickenCorp. (1976). 47 Ohio St.2d 154. The general rule for recovery of compensatory damages is that the injury and resulting damage must be shown with certainty and not left to speculation. James H.Washington Ins. Agency v. Nationwide Mut. Ins. Co. (1993),95 Ohio App.3d 577, 586. Thus, actual reasonable litigation costs incurred by TPS prior to August 8, 1996 will be compensable damages. Appellant presented evidence of payment of $909.75 as litigation expenses incurred. Thus, when we construe the evidence most strongly in favor of appellant as we are required to do, we find that, at trial, appellant has demonstrated with certainty that compensable damages in the amount of $909.75 were incurred by TPS during the time period that appellee Nationwide failed to provide a defense to the claims against it and directed verdict on the claim for compensatory damages is improper. Moreover, the record demonstrates that the $1,155 cost of the trial transcript for this appeal was incurred by appellant. Accordingly we find appellant's eleventh assignment of error to be well taken and find appellant is entitled to compensatory damages of $2,064.75.
In assignment of error number twelve, appellant asserts that the trial court erred in granting a directed verdict on its claim for indemnification. The record reflects that Nationwide indemnified appellant to the full extent of the fifteen thousand dollar settlement amount. Therefore, directed verdict was proper and assignment of error twelve is without merit.
In assignment of error number thirteen, appellant contends that the trial court erred in granting a directed verdict on the issue of attorneys fees. Specifically, appellant asserts that it is entitled to reasonable attorneys fees pursuant to the trial court's entry of judgment on August 8, 1996 and further asserts that the reasonableness of the fees was demonstrated at hearing held October 31, 1996. Nationwide, on the other hand, contends that the party seeking the fees bears the burden of supporting its request with evidence tending to prove the amount of time spent by the attorney was reasonable. Nationwide asserts that where appellant failed to meet that burden and there is no error on the part of the trial court directing the verdict in its favor. We disagree.
The record demonstrates that appellant is entitled to recover reasonable attorneys fees pursuant to the ruling of the trial court entered August 8, 1996. Therefore, it was not incumbent upon appellant to prove its entitlement to attorneys fees once again at trial, but it was required to demonstrate the reasonable amount of fees to which it was entitled. The record in this appeal reveals that on July 28, 1998 a release was filed in this court by which appellant's counsel released appellant TPS aka Terry Turk of any obligation of payment of attorneys fees. Thus, any unpaid legal bills of TPS are no longer due and owing by it. However, as stated above, the idea of damages is to make the nonbreaching party "whole." F. Enterprises, supra. Here, the evidence in the record demonstrates that appellant, prior to signing the release, paid a retainer of three thousand dollars to counsel for legal services relating to the defense of the lawsuit against it. We find that there is sufficient credible evidence in the record to demonstrate that TPS' counsel did expend significant compensable time in the preparation of the case. This conclusion is supported by the evidence in the record of pleadings drafted and filed by counsel, the appearance of counsel at depositions and the declaratory hearing on July 23, 1996, and the trial testimony of Turk indicating that he conferred with TPS' counsel on numerous occasions for long hours both in person and on the phone. Accordingly, when we construe the evidence most strongly in favor of appellant we find that the trial court erred in granting a directed verdict on the issue of attorneys fees. Here, competent and credible evidence exists to demonstrate that appellant incurred three thousand dollars of expense in defending the lawsuit against it. Accordingly, we find assignment of error thirteen well taken and find appellant entitled to the three thousand dollars in attorneys fees as incurred by payment of the retainer to its counsel.
In assigned error fourteen, appellant contends that the trial court erred in granting a motion for directed verdict on the issue of misrepresentation. Specifically, appellant contends that the evidence demonstrated that Nationwide misrepresented its duty regarding coverage and misrepresented the policy exclusion. Nationwide, on the other hand, asserts that no claim for misrepresentation was set forth in the pleading and, moreover, appellant failed to present substantial probative evidence necessary to meet its burden of proof.
To prevail on a claim for misrepresentation, it must be shown that there was (a) representation (b) material to the transaction at hand (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it was true or false that knowledge may be inferred (d) with intent to mislead another into relying on the representation (e) justifiable reliance upon the representation and (f) a resulting injury proximately caused by the reliance. Burr v. Stark Cty. Bd.of Commrs. (1986), 23 Ohio St.3d 69, 73. A careful review of the evidence adduced at trial, even where this evidence is construed most strongly in favor of appellant, fails to disclose evidence sufficient to support appellant's assertion of a claim for misrepresentation by either Jack Stanton as the agent or by Nationwide for its duty regarding coverage or interpretation of the policy exclusions. Accordingly, the trial court did not err in granting a directed verdict on the claim of misrepresentation and appellant's fourteenth assignment of error is without merit.
In assigned error fifteen, appellant contends that the trial court erred in granting a directed verdict on the issue of fraud. Specifically, appellant contends that sufficient evidence was presented upon which a determination could be made that Nationwide had knowledge that false statements were made or false statements were made with utter, reckless disregard when Nationwide denied coverage. Further, appellant contends that sufficient evidence was presented to demonstrate appellee Stanton's deception and a jury question exists as to whether Stanton had knowledge of the deception or if he was reckless in the abandonment of his duties.
In Gaines v. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54,55, the court described the necessary elements of fraud as follows:
 The elements of an action in actual fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.
See, also, Beder v. Cleveland Browns (July 9, 1998), Cuyahoga App. No. 72500, unreported.
The record demonstrates that there is no evidence which reveals that any representation made by Jack Stanton was made either falsely or with the knowledge of its falsity or even with such utter disregard or recklessness as to its truth that knowledge of falsity might be inferred to him. Moreover, Turk admitted that he did not believe that Jack Stanton intended to mislead, nor was there any evidence that Stanton or Nationwide had an intent to mislead another to rely upon any misrepresentation. In fact, Stanton admitted that he thought there was coverage for the underlying lawsuit. Therefore, even construing the evidence most strongly in favor of appellant, there was insufficient evidence of fraud to go to a jury.
Moreover, to prevail on a claim for punitive damages as a result of fraud, in addition to proving the tort of fraud, the plaintiff must demonstrate that the fraud is aggravated by the existence of malice or ill-will, or must demonstrate that the wrongdoing is particularly gross or egregious. Charles R. CombsTrucking, Inc. v. Internatl. Harvester Co. (1984), 12 Ohio St.3d 241, paragraph three of the syllabus. Here, insufficient evidence was presented on the claim of fraud and no evidence was presented on the existence of malice or ill-will. Accordingly, the trial court did not err in granting a directed verdict on the claim for fraud and punitive damages. We find appellant's fifteenth assignment of error to be without merit.
In assignment of error sixteen, appellant complains that the trial court erred in directing the verdict on the issue of bad faith. Appellant contends that although a claim for bad faith was never asserted where an insurer has been found to have defrauded its insured, then bad faith has been established. Specifically, appellant asserts that sufficient evidence was presented to support the conclusion that Nationwide acted in bad faith for refusing to provide TPS with full information, failed to exercise diligence concerning the claim, and refused to allow discovery.
While we acknowledge that appellant failed to assert a claim for bad faith, we will review appellant's assigned error as a claim of breach of good faith. It is well settled that "based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer."Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, paragraph one of the syllabus. An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefore. Zoppo v.Homestead Ins. Co. (1994), 71 Ohio St.3d 552, syllabus. See, also, Kehoe v. Lightning Rod Mut. Ins. Co. (1996), 115 Ohio App.3d 234,237. To prevail on a claim of bad faith, the insured "must prove that the insurer's refusal to pay a claim was totally arbitrary and capricious."Spremulli's Am. Serv. v. Cincinnati Ins. Co. (1992), 91 Ohio App.3d 317,322, appeal dismissed as improvidently allowed (1994),68 Ohio St.3d 1223.
The record demonstrates that the underlying complaint for which appellant sought a defense and coverage under the policy contained only claims for mental anguish, not property damage nor bodily injury. Relying upon the terms of the policy, Nationwide demonstrated that it held a justifiable belief that coverage did not exist for such claims and defense was not required. No evidence was presented to show that this decision was either arbitrary or capricious. Moreover, the evidence presented demonstrates that this determination by the insurer was neither totally arbitrary nor capricious. Thus, the evidence presented even when construed in favor of appellant is insufficient to support a claim of breach of good faith or the concomitant assertion of bad faith. Accordingly, the trial court did not err in granting a directed verdict on the issue of bad faith and appellant's sixteenth assignment of error is without merit.
Finally, in assignment of error seventeen, appellant contends that the trial court erred in granting a directed verdict on the issue of punitive damages. Specifically, appellant asserts that it is entitled to the jury's consideration of its punitive damage claim because such damages are recoverable in this case due to Nationwide's bad faith in its denial of appellant's claim.
In Helmick v. Republic-Franklin Ins Co (1988), 39 Ohio St.3d 71,75, our supreme court, citing Hoskins v. Aetna Life Ins Co.,supra, stated:
 `Punitive damages may be recovered against an insurer who breaches [its] duty of good faith in refusing to pay a claim of its insured upon proof of actual malice, fraud or insult on the part of the insurer.'
 That holding was premised on the theory that there is a duty imposed upon an insurer to act in good faith and that any bad-faith refusal to pay a claim is a breach of that duty. Consequently, `[i]nasmuch as the breach of the duty to act in good faith is tortious in nature, punitive damages may be recovered against an insurer [that] breaches [its] duty of good faith in refusing to pay a claim of its insured upon adequate proof.' Id. at 277. (citations omitted) However, Hoskins also emphasized that punitive damages are not recoverable against an insurer for refusal to pay a valid claim unless the refusal is both unjustified and in bad faith. Id. (Citations omitted). Nor does the fact that a party is entitled to compensatory damages mean that he is entitled to exemplary damages. Hoskins, supra, at 278 (citations omitted).
As stated above, no facts sufficient to support a claim of bad faith were presented in the matter sub judice. As a consequence, punitive damages were not recoverable against appellee Nationwide and the trial court properly directed the verdict in favor of appellee Nationwide on the claim for punitive damages. Accordingly, appellant's seventeenth assignment of error is without merit.
Affirmed in part, reversed in part and judgment entered in the amount of $5,064.75 in favor of appellant.
This cause is affirmed in part and reversed in part.
It is, therefore, ordered that said appellant recover of said appellee Nationwide costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, PRESIDING JUDGE.
MICHAEL J. CORRIGAN, J. and ANNE L. KILBANE, J., CONCUR.