OPINION
{¶ 1} This is an appeal from the Court of Common Pleas of Muskingum County which rendered judgment after a bench trial was presented.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The facts indicate that Appellee, Ernest Bruns, entered into a real estate contract with Ohio Properties, the seller, to purchase commercial property at 601 Underwood Street, Zanesville, Ohio.
 {¶ 3} Ronald Thompson of Century 21 was the realtor, being an agent for all parties ultimately involved.
 {¶ 4} Under the terms of the agreement which occurred on March 6, 2000, Appellee was to make a loan application within five days with a commitment within thirty days.
 {¶ 5} If neither event was accomplished, the seller could void the transaction.
 {¶ 6} Neither the application nor commitment was obtained by Appellee within the time deadlines, but Ohio Properties took no action to exercise its right to terminate the contract.
 {¶ 7} Appellant, Wayne Watson, contacted the realtor on March 15, 2000, and a back-up purchase agreement was executed with Ohio Properties agreeing.
 {¶ 8} Thereafter, Appellant began discussions to purchase the primary contractual purchase position of Appellee.
 {¶ 9} The court determined from testimony that Appellant agreed to acquire such position for the payment of $150,000.00 to Appellee even though the signed agreement (Exhibit B8) recited the price was an "undisclosed sum".
 {¶ 10} Ohio Properties released Appellee from its original contract of March 6, 2000.
 {¶ 11} Appellant paid only $50,000.00 of the assumption agreement with Appellee and the court rendered judgment for the remaining $100,000.00.
 {¶ 12} While Appellant asserts that the $50,000.00 was to be held in escrow by the realtor who distributed such sum, we are not concerned with any claims of improper distribution as Mr. Thompson and the agency were dismissed from this action.
 {¶ 13} Appellant asserts that the condition of the property and the non-assumability of the mortgage or at its stated rate affected his intention to complete the purchase and that this constituted misrepresentation.
 {¶ 14} Appellant raises seven Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 15} "I. THE TRIAL COURT ERRED BY FINDING THAT A CONTRACT FOR $150,000.00 EXISTED BETWEEN WATSON AND BRUNS WHEN THE TERMS OF ANY SUCH CONTRACT WERE MUTUALLY MODIFIED BY THE WORDS AND ACTIONS OF THE PARTIES AT THE TIME OF FORMALIZING ANY SUCH CONTRACT.
 {¶ 16} "II. THE TRIAL COURT ERRED IN FINDING THAT WATSON'S FAILURE/REFUSAL TO PAY AN ADDITIONAL $100,000.00 CONSTITUTED A BREACH OF CONTRACT.
 {¶ 17} "III. THE RULING OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 18} "IV. THE TRIAL COURT ERRED BY FAILING TO FIND THAT WATSON HAD BEEN INDUCED BY FRAUD TO ENTER INTO A CONTRACT WITH BRUNS TO PURCHASE HIS POSITION.
 {¶ 19} "V. THE TRIAL COURT ERRED BY FAILING TO FIND THAT ANY CONTRACT BETWEEN BRUNS AND WATSON WAS VOID DUE TO A LACK OF CONSIDERATION.
 {¶ 20} "VI. BRUNS FAILED TO MITIGATE ANY DAMAGES HE MAY HAVE SUFFERED AS A RESULT OF ANY ALLEGED BREACH OF CONTRACT.
 {¶ 21} "VI. [SIC] THE TRIAL COURT ERRED BY AWARDING JUDGMENT FOR $100,000.00 TO BRUNS AS SUCH AWARD CONSTITUTES UNJUST ENRICHMENT."
 I, II, III, V {¶ 22} We shall address the First, Second, Third and Fifth Assignments of Error together as each relate directly to the formation of a contract. While the Fourth Assignment also is an assertion of error as to such contractual finding, this will be discussed separately.
 {¶ 23} As to the creation of a contract requiring payment of $150,000.00, the Findings of Fact by the trial court in this regard were:
 {¶ 24} "14. Wayne Watson, however, on March 31, 2000, did sign an Agreement, Exhibit "B8", wherein he agreed `that Mr. Watson will purchase Mr. Bruns' interests and rights in and to the property and in and to the primary contract for an undisclosed sum.' The undisclosed sum in the Agreement at Exhibit `B8' was one hundred fifty thousand dollars and no cents ($150,000.00) as testified to by both parties.
 {¶ 25} "13. Wayne Watson did not pay Ernest Bruns one hundred fifty thousand dollars and no cents ($150,000.00) on March 31, 2000. Wayne Watson only paid fifty thousand dollars and no cents ($50,000.00). Wayne Watson then was to pay the remaining one hundred thousand dollars and no cents ($100,000.00) on April 7, 2000."
 {¶ 26} Appellant argues that these findings did not consider an oral modification by acceptance of only the $50,000.00 rather than $150,000.00.
 {¶ 27} However, the receipt which acknowledged the $50,000.00 tendered also stated $50,000.00 of $150,000.00 arrangement regarding 601 Underwood Street.
 {¶ 28} In addition, the following testimony provides further indicia of evidence as to a contract:
 {¶ 29} Mr. Cultice: "And how was this hundred and fifty thousand dollar figure arrived at?
 {¶ 30} Mr. Watson: "Through the negotiation of Ron Thompson and myself.
 {¶ 31} Mr. Cultice: "All right. And what is your understanding today as to what this hundred and fifty thousand dollars was to do, or what was it for?
 {¶ 32} Mr. Watson: "The hundred and fifty thousand dollars was for Ernie Bruns to go away from this deal that was done." (Tr. at p. 225)
 {¶ 33} "* * *"
 {¶ 34} Mr. Cultice: " I asked you this question on page 134, lines 1 though 4: `All right. And the conversation with Ron prior to the 31st, was that you could buy out Ernie Bruns' and his partner's position for $150,000 and — and that's the agreement to which you agreed?
 {¶ 35} "Do you recall your answer that day?
 {¶ 36} Mr. Watson: "I said yes." (Tr. at p. 226.)
 {¶ 37} "* * *"
 {¶ 38} Mr. Cultice: "You were going to walk into paperwork, that is, all the financial arrangements that go into buying commercial real estate? You were going to step into the same shoes that Ernie Bruns had done?
 {¶ 39} Mr. Watson: "Yes." (Tr. at p. 228).
 {¶ 40} It is clear from Appellant's testimony and the receipt that he was to pay a total of $150,000.00 for Appellee's position even though he paid only $50,000.00 initially. The receipt negates any concept of oral modification by acceptance of the partial payment.
 {¶ 41} As to the manifest weight of the evidence, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. MorrisCo. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 42} Upon review we find that sufficient, competent and credible evidence supported the court's finding that a contract to purchase the position of Appellee was created, that no oral modification occurred, and that the failure to pay the balance of the agreed price of $150,000.00 constituted a breach. Consideration was exchanged in that Appellee transferred his contractual interest for the agreed price.
 {¶ 43} We find that the First, Second, Third and Fifth Assignments are not well taken.
 IV {¶ 44} The Fourth Assignment alleges error as to a finding of fraud in the inducement.
 {¶ 45} "The tort of fraud or fraudulent inducement has the following elements: (1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (3) intent to induce reliance on the representations; (4) justifiable reliance; and (5) injury proximately caused by the reliance. See, e.g. Mussivand v. David (1989),45 Ohio St.3d 314, 322, 544 N.E.2d 265; Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 83, 10 OBR 408, 461 N.E. 2d 1273, fn 4."
 {¶ 46} This argument is primarily premised on the assumption that the existing mortgage was not assumable even though the realtor, in the presence of Appellee, stated it was.
 {¶ 47} In this regard the court found:
 {¶ 48} "From March 15 through March 27, 2000, Wayne Watson never inspected the property nor did he contact the mortgage holder to determine the assumability of the mortgage on said property. Watson is a sophisticated real estate professional who knew full well his responsibility and risks in purchasing Brun's primary position without fully exploring all significant elements associated with his purchase of not only the property but also Brun's primary position."
 {¶ 49} The actual terms of the mortgage would control the question of assumability rather than what Deidra Leasure may have been told by the lender.
 {¶ 50} The burden of proof as to this fact was on Appellant who, however, objected to the introduction into evidence of such mortgage document. (Tr. at 232).
 {¶ 51} The conclusions of law as to the lack of fraud in the inducement are stated in paragraphs 7 through 10.
 {¶ 52} We find again that the evidence supports these conclusions.
 {¶ 53} Therefore, the Fourth Assignment of Error is rejected.
 VI {¶ 54} The Sixth Assignment asserts failure by Appellee to mitigate damages. We disagree with this argument as it is unrelated to the facts.
 {¶ 55} While Appellant correctly states the obligation to mitigate damages is set forth in Homes by Calkins, Inc. v.Fisher (1993), 92 Ohio App.3d 262, it is not applicable.
 {¶ 56} Appellant's premise is that, when it became apparent that he was not going through with the purchase, Appellee should have re-assumed the contract.
 {¶ 57} The falsity of this argument is that Appellee sold his contractual position to Appellant.
 {¶ 58} Whether he could have subsequently agreed again to buy the property has nothing to do with the transfer of his primary position. The agreement between the parties to this appeal related to the primary position of Appellee, not to the real estate itself.
 {¶ 59} This Sixth Assignment is not well taken.
 VII {¶ 60} The Seventh Assignment concerns unjust enrichment.
 {¶ 61} The requirements thereof were set forth by this court in Baier, Trustee v. Holden, 5th Dist. App. No. 2005CA00205,2006-Ohio-2053:
 {¶ 62} "In order to recover under a theory of unjust enrichment, a plaintiff must prove by a preponderance of the evidence; (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit, and (3) the defendant was retaining that benefit under circumstances where it would be unjust for him to retain that benefit without payment. Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179, 183. See also Hummel v. Hummel (1938), 133 Ohio St. 520, 525."
 {¶ 63} Again, this theory is unrelated to the facts presented.
 {¶ 64} Appellee agreed and did transfer his primary contractual position to Appellant. Such transfer was completed, the seller consented and released Appellee and accepted Appellant.
 {¶ 65} No unjust enrichment is involved.
 {¶ 66} Appellant merely failed to pay the agreed consideration.
 {¶ 67} The Seventh Assignment is also denied.
 {¶ 68} The judgment of the Muskingum County Court of Common Pleas is affirmed at Appellant's costs.
Boggins, J. Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Muskingum County Court of Common Pleas is affirmed.
Costs assessed to appellant.