OPINION
{¶ 1} Appellants Below Clearance, LLC and Millard Cummins ("Below Clearance") appeal the decision rendered in the Coshocton County Court of Common Pleas that affirmed the magistrate's decision in favor of Appellee Refugee Road, Ltd. ("Refugee Road"). The following facts give rise to this appeal.
 {¶ 2} In the summer of 2001, Tina Schenk started Below Clearance as an internet business that sold markdowns, seconds and discontinued clothing on ebay. Approximately one year after starting the business, Ms. Schenk began searching for commercial space that would accommodate both a storefront business as well as her internet business. Millard Cummins, a former employer, provided financial backing for this endeavor. In the summer of 2002, Below Clearance became aware of the property owned by Refugee Road and sought to lease it.
 {¶ 3} In August 2002, Below Clearance signed a thirty-eight-month lease, through October 2005, for approximately 10,150 square feet of space. Ms. Schenk's overriding concern during the negotiation process was that Below Clearance be able to move into the space and open for business in time for the holiday shopping season. Refugee Road was concerned about the financial condition of Below Clearance and, as a result, requested a security deposit of one month's rent in addition to payment of one month's rent at the time of signing the lease agreement. Refugee Road also required Mr. Cummins to sign a guaranty obligating him personally in the event of a default by Below Clearance.
 {¶ 4} Pursuant to the terms of the lease agreement, Below Clearance agreed to pay rent in the amount of $8,300 beginning sixty days from the commencement date as defined in the lease agreement. The lease agreement also set forth "Exhibit B," which was a list of items described as "Landlord's Work," and includes the following:
 {¶ 5} "1. Exterior façade to be determined by Landlord.
 {¶ 6} "2. New entry location to be completed pursuant to the drawings attached as Exhibit B-1.
 {¶ 7} "3. Parking reconfiguration to be completed by Landlord.
 {¶ 8} "4. Bathrooms to ADA requirements.
 {¶ 9} "5. Separation of electric, HVAC, plumbing and sprinkler for each premises of the Landlord's Building.
 {¶ 10} "6. Relocation of rear overhead door to location determined by Landlord.
 {¶ 11} "7. Signage to be approved by Landlord and City of Pickerington.
 {¶ 12} "8. All interiors As-Is." Lease Agreement, Aug. 2, 2002, at 32
 {¶ 13} Section 4(b) of the lease agreement further provides that:
 {¶ 14} "Notwithstanding the provisions of Section 4(a) above, in the event that Landlord's Work and the renovation/construction work that Landlord is performing in other portions of the Building shall have not been substantially completed (other than minor `punchlist' items which do not materially interfere with Tenant's use and occupancy of the premises) on or before a date which is sixty (60) days after the Landlord receives all necessary governmental approvals for such work, the monthly minimum rent payment shall be Six Thousand Six Hundred Dollars ($6,600.00) per month until Landlord's Work and such other renovation/construction work are substantially completed." Id. at 3.
 {¶ 15} Approximately three weeks after signing the lease agreement, Ms. Schenk became concerned about the speed of the interior construction and therefore, sought to terminate the lease. In response to Ms. Schenk's concerns, Refugee Road scheduled a meeting with Ms. Schenk. This meeting focused on completion of the interior construction in order to secure an occupancy permit so Below Clearance could move into the premises and open for business. As a result of this meeting, the parties executed an amendment to the lease agreement. The amendment required Refugee Road to expedite and perform the necessary construction to allow the City of Pickerington to grant Below Clearance a temporary certificate of occupancy on or before September 13, 2002. The amended lease agreement also provides that:
 {¶ 16} "* * * In the event that any of the above-described deadlines are not met, then, at Tenant's option, this Lease shall terminate, the Security Deposit and first month's rent (totaling $16,600.00) shall be returned to Tenant within five (5) business days after Tenant delivers to Landlord notice of such termination, and the parties shall have no further obligations to each other pursuant to the Lease or otherwise. Tenant shall give Landlord notice of said termination no later than September 15, 2002. Except as set forth in Section 4(b) above, Tenant's right to terminate, as set forth in this Section 6, shall be Tenant's sole remedy and/or course against Landlord under this Amendment, the Lease or otherwise in the event that Landlord fails to meet any of the above-described deadlines." First Amendment of Lease, ¶ 6, at 3.
 {¶ 17} Pursuant to the terms of the amended lease agreement, Below Clearance never attempted to exercise its right to terminate the lease agreement. After the City of Pickerington granted a certificate of plan approval on September 12, 2002, and a temporary occupancy permit on September 13, 2002, Below Clearance moved into the leased premises and opened for business. At the same time Refugee Road was working on the interior renovations for Below Clearance, it was also working on an exterior renovation of the entire building.
 {¶ 18} Below Clearance paid its rent as due in January, February, March and April 2003. However, in a letter dated May 8, 2003, counsel for Below Clearance informed Refugee Road that Below Clearance had overpaid its rent beginning in November 2002 and, as result, would not pay any rent for May and would apply a credit of $3,576.67 to the rent due in June. In a letter dated May 20, 2003, Refugee Road advised Ms. Schenk that Below Clearance was in default pursuant to Section 31(a)(1) of the lease agreement. This section of the lease agreement provides:
 {¶ 19} "(a) Elements of Default. The occurrence of any one or more of the following events shall constitute a default of this Lease by the Tenant:
 {¶ 20} "1. Tenant fails to pay any monthly installment of rent within ten days after the same shall be due and payable."
 {¶ 21} Refugee Road specifically informed Ms. Schenk, in this letter, that Below Clearance failed to pay the minimum rent due for May 2003 and had not reimbursed Refugee Road for the pro rata share of the utilities with respect to invoices dated April 4 and April 23, 2003. Thereafter, on May 8, 2003, Refugee Road served Below Clearance with a "Notice to Leave Premises." Upon receipt of the notice, Below Clearance moved and vacated the premises in July 2003.
 {¶ 22} On June 3, 2003, appellants filed a complaint against Refugee Road seeking declaratory relief regarding the rights and obligations under the lease agreement entered into by the parties on August 22, 2002. Below Clearance also sought injunctive relief to prevent Refugee Road from reclaiming possession of the leased premises. On June 6, 2003, Refugee Road filed its answer and a counterclaim for forcible entry and detainer, breach of lease, promissory estoppel, unjust enrichment and breach of guaranty.
 {¶ 23} Following Below Clearance's default, Refugee Road retained Ohio Equities, in October 2003, to assist in locating a new tenant. In September 2004, Aaron Rents, Inc. entered into a lease agreement for a portion of the space formerly occupied by Below Clearance. This matter proceeded to trial, before a magistrate, on November 15, 2004. The magistrate issued her decision on April 13, 2005, in which she made the following findings: 1) Below Clearance materially breached the lease agreement and Refugee Road was damaged by the breach in the amount of $234,629.08; 2) Refugee Road made reasonable efforts to mitigate its damages; and 3) Mr. Cummins was liable to Refugee Road on his guaranty.
 {¶ 24} On April 27, 2005, Below Clearance filed objections to the magistrate's decision and requested an extension of time to obtain portions of the transcript. Following a four-month delay, on August 22, 2005, Below Clearance filed its supplemental objections and a partial transcript. The trial court overruled Below Clearance's objections on November 29, 2005.
 {¶ 25} Below Clearance timely filed a notice of appeal and sets forth the following assignments of error[1] for our consideration:
 {¶ 26} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO CONCLUDE THAT LANDLORD BREACHED SECTION 2(C) OF THE LEASE, WHICH REQUIRED LANDLORD TO PROMPTLY AND DILIGENTLY UNDERTAKE AND COMPLETE LANDLORD'S WORK.
 {¶ 27} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO APPLY THE `PROMPT COMMENCEMENT' REQUIREMENT OF SECTION 2(C) OF THE LEASE IN DETERMINING AT WHAT POINT TENANT WAS ENTITLED TO A RENT REDUCTION UNDER SECTION 4(B) OF THE LEASE.
 {¶ 28} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN CONCLUDING THAT TENANT BREACHED THE LEASE.
 {¶ 29} "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN CONCLUDING THAT LANDLORD DID NOT FRAUDULENTLY MISREPRESENT ANY MATERIAL FACT OR INDUCE TENANT TO ENTER INTO THE LEASE BY FALSE REPRESENTATIONS.
 {¶ 30} "V. THE TRIAL COURT ABUSED ITS DISCRETION IN CONCLUDING THAT LANDLORD REASONABLY MITIGATED IT DAMAGES."
 "Standard of Review" {¶ 31} Prior to addressing the merits of Below Clearance's assignments of error, we find it first necessary to address the issue of the partial transcript and how it affects our review of this matter on appeal. Below Clearance filed its objections on April 27, 2005. On this same date, Below Clearance also filed its request for trial transcript.
 {¶ 32} However, instead of requesting the entire transcript, Below Clearance requested only certain portions of the transcript. Subsequently, Below Clearance sought leave to obtain a full transcript of the proceedings on September 22, 2005. The trial court denied Below Clearance's motion on November 21, 2005, and affirmed the magistrate's decision based upon the partial transcript filed on July 25, 2005.
 {¶ 33} Thereafter, in Below Clearance's request for transcript, filed with its notice of appeal on December 22, 2005, Below Clearance specifically requested the court reporter to produce the complete transcript of the trial from November 15 through November 22, 2004. The record filed with the clerk of courts, on May 16, 2006, consists of nine volumes, which represents the entire trial transcript. The partial transcript considered by the trial court was also included in the record as part of the trial court file.
 {¶ 34} Thus, the first issue we must decide is whether we may consider the entire trial transcript since it was not before the trial court when it ruled upon Below Clearance's objections. Civ.R. 53(E)(2)(c) addresses objections to a magistrate's findings of fact and states as follows:
 {¶ 35} "If the parties stipulate in writing that the magistrate's findings of fact shall be final, they may object only to errors of law in the magistrate's decision. Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available."
 {¶ 36} Pursuant to the Ohio Supreme Court's decision, in State v.Ishmail (1978), 54 Ohio St.2d 402, we conclude we may not consider the entire transcript on appeal since it was not before the trial court when it ruled upon Below Clearance's objections. In the Ishmail case, the Court determined it was improper for the court of appeals to add the transcript of proceedings at which guilty pleas were entered because the transcript was not part of the record for the trial court proceedings transmitted to the court of appeals. Id. at 406. Specifically, the Court held:
 {¶ 37} "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceeding, and then decide the appeal on the basis of the new matter." Id. at paragraph one of the syllabus.
 {¶ 38} Accordingly, pursuant to Ishmail, we may only consider the partial transcript used by the trial court when it ruled upon Below Clearance's objections. The partial transcript submitted by Below Clearance consisted of 513 pages. The entire transcript submitted to the court of appeals consisted of 1,577 pages. It would appear that the partial transcript submitted in support of the objections did not contain all the evidence relevant to the disputed facts as required by Civ.R. 53(E)(2)(c).
 {¶ 39} We base this conclusion on the fact that the partial transcript contains only the testimony of nine witnesses in response to questions asked by counsel for Below Clearance. The partial transcript contains no testimony in response to questions asked by counsel for Refugee Road. Because Below Clearance failed to comply with Civ.R. 53(E)(3)(c), the trial court was required to accept the magistrate's findings of fact and examine only the legal conclusions based on those facts. SeeMelendez v. Mankis (Dec. 15, 1999), Lorain App. No. 98CA007091, at 3. In its judgment entry affirming the magistrate's decision, the trial court adopted the magistrate's findings of fact and conclusions of law. Judgment Entry, Nov. 29, 2005, at 2.
 {¶ 40} On appeal to this Court, our review is limited to whether the trial court abused its discretion in adopting the magistrate's decision.State ex rel. Duncan v. Chippewa Twp. Trustees, 73 Ohio St.3d 728, 730,1995-Ohio-272. In the Duncan decision, the Ohio Supreme Court explained:
 {¶ 41} "When a party objecting to a referee's report has failed to provide the trial court with the evidence and documents by which the court could make a finding independent of the report, appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the referee's report, and the appellate court is precluded from considering the transcript of the hearing submitted with the appellate record. [Citations omitted.]
 {¶ 42} "In other words, an appeal under these circumstances can be reviewed by the appellate court to determine whether the trial court's application of the law to its factual findings constituted an abuse of discretion." [Citation omitted.] Id. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Accordingly, it is based upon this standard that we review Below Clearance's assignments of error.
 I {¶ 43} In its First Assignment of Error, Below Clearance maintains the trial court abused its discretion when it failed to find that Refugee Road breached Section 2(c) of the lease agreement, which required Refugee Road to promptly and diligently undertake and complete various construction projects contained in Exhibit B of the agreement. We disagree.
 {¶ 44} Specifically, Below Clearance argues Refugee Road breached Section 2(c) of the lease agreement when it took Refugee Road eleven months, after the lease signing, to complete the various construction projects contained in Exhibit B. In finding no breach of the lease agreement by Refugee Road, the magistrate concluded:
 {¶ 45} "The Court agrees that this provision is unambiguous, and required Refugee Road to act without delay in proceeding with Landlord's Work contained in Exhibit B attached to the Lease. In taking into consideration the express language of the Lease, as well as all the surrounding circumstances in this matter — the need to get specific architectural drawings prepared and submitted, the need to obtain all governmental approvals and the delay of Auto Zone in signing the Lease with Refugee Road — the Court finds that Refugee Road promptly and diligently obtained the governmental approvals necessary to receive a building permit for the exterior renovation of the shopping center. The Court further finds that Refugee Road commenced and diligently prosecuted to completion those items in Exhibit B. Refugee Road's deferral of a portion of Landlord's Work, specifically the exterior façade, was reasonable under the circumstances and did not constitute a breach of Section 2(c)." Magistrate's Decision, Apr. 13, 2005, at 14.
 {¶ 46} Below Clearance contends the magistrate's conclusion is contrary to law and constitutes an abuse of discretion for the following reasons. First, Refugee Road purposely delayed in obtaining the required drawings, thereby delaying the necessary governmental approval. Second, Refugee Road purposely delayed performance of the items that did not require the issuance of a building permit. Third, Refugee Road's obligations with regard to Below Clearance were contingent upon lease arrangements with Auto Zone.
 {¶ 47} In her decision, the magistrate made no finding that Refugee Road purposely delayed any construction work on the building in question. Rather, the magistrate concluded that "* * * all necessary governmental approvals were obtained on or around the end of February 2003* * *" and that "[a]fter receiving the building permit for the exterior construction, Refugee Road began the exterior construction in late February 2003." Id. at 8. It is based upon these factual findings that the magistrate subsequently concluded, in her Conclusions of Law, that Refugee Road did not breach Section 2(c) of the lease agreement.
 {¶ 48} As noted above, we must accept these factual findings and examine only the legal conclusions based on these findings. Because the magistrate concluded that Refugee Road promptly commenced and diligently pursued completion of the construction projects contained in Exhibit B, despite the eleven-month delay, we find the trial court's conclusion affirming the magistrate's decision that Refugee Road did not breach Section 2(c) of the lease agreement is not an abuse of discretion.
 {¶ 49} Below Clearance's First Assignment of Error is overruled.
 II {¶ 50} In its Second Assignment of Error, Below Clearance maintains the trial court abused its discretion when it failed to apply the "prompt commencement" requirement of Section 2(c) of the lease agreement in determining at what point it was entitled to a rent reduction under Section 4(b) of the agreement. We disagree.
 {¶ 51} In its Findings of Fact, the magistrate specifically determined that, "* * * for purposes of the interpretation of the Lease and its Amendment, that all necessary governmental approvals were obtained on or around the end of February 2003." Id. Based upon this specific finding of fact, the magistrate concluded:
 {¶ 52} "While the Court finds that, pursuant to § 4(b), Below Clearance would have been entitled to a rent reduction beginning on or around May 1, 2003 since the exterior construction began on or around March 1, 2003 and was not substantially completed by May 1, 2003 — sixty [60] days thereafter, Below Clearance refused to pay any rent in May 2003." Id. at 15.
 {¶ 53} Based upon the magistrate's factual finding that all necessary governmental approvals were obtained around the end of February 2003, the trial did not abuse its discretion when it adopted the magistrate's conclusion of law that Below Clearance would not be entitled to a reduction in rent, pursuant to Section 4(b) of the lease agreement, until May 1, 2003.
 {¶ 54} Below Clearance's Second Assignment of Error is overruled.
 III {¶ 55} Below Clearance contends, in its Third Assignment of Error, the trial court abused its discretion when it found that it breached the lease agreement. We disagree.
 {¶ 56} Below Clearance maintains that Refugee Road committed the first breach by failing to promptly undertake and complete substantially, within a reasonable time, all of the construction projects contained in Exhibit B. The magistrate concluded differently, in her decision, and held as follows concerning the breach of the lease agreement:
 {¶ 57} "Below Clearance's obligation to pay rent was an essential purpose of the Lease. Thus, Below Clearance's failure to pay the minimum rent due for May 2003 constituted a default under the terms of the Lease, specifically Section 31(a), resulting in Below Clearance's material breach of the Lease agreement. The Court further finds that Refugee Road performed all of its obligations under the Lease and, therefore, Below Clearance's breach of the Lease is not excused." Id.
 {¶ 58} The trial court did not abuse its discretion when it adopted the magistrate's finding that Below Clearance breached the lease agreement because as noted in the Findings of Fact, the exterior construction went on from March through June 2003. Id. at 8. Based upon the fact that the exterior work was not substantially completed by May 1, 2003, pursuant to Section 4(b) of the lease agreement, Below Clearance was entitled to a reduction in rent for the month of May. However, Below Clearance refused to pay any rent for the month of May. Accordingly, the trial court did not abuse its discretion when it adopted the magistrate's finding that Below Clearance breached the lease agreement.
 {¶ 59} Below Clearance's Third Assignment of Error is overruled.
 IV {¶ 60} In its Fourth Assignment of Error, Below Clearance maintains the trial court abused its discretion when it determined Refugee Road did not fraudulently misrepresent any material fact or induce Below Clearance to enter into the lease agreement by false representations. We disagree.
 {¶ 61} The tort of fraudulent inducement[2] has the following elements: (1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (3) intent to induce reliance on the representations; (4) justifiable reliance; and (5) injury proximately caused by the reliance. Watson v. Thompson, Muskingum App. No. CT2005-0060, 2006-Ohio-3828, at ¶ 45.
 {¶ 62} Specifically, Below Clearance alleges that Refugee Road fraudulently concealed from it that Refugee Road's construction work pursuant to Exhibit B would not be completed until Auto Zone signed a lease. Below Clearance argues that had it known of the Auto Zone contingency, it would not have entered into the lease agreement.
 {¶ 63} In her findings of fact, the magistrate determined that at the time Refugee Road was negotiating with Below Clearance, it was also negotiating with Auto Zone, and eventually entered into a lease with Auto Zone on November 12, 2002. Magistrate's Decision, Apr. 13, 2005, at 7. The magistrate concluded there was nothing to support Below Clearance's claim that Refugee Road intended to conceal the fact that it was negotiating with Cottman or that exterior construction would not begin until Refugee Road had signed the lease with Auto Zone. Id. at 19.
 {¶ 64} We have reviewed the magistrate's findings of fact and conclude they do not support Below Clearance's argument regarding the alleged Auto Zone contingency. The magistrate found Below Clearance's overriding concern, during the negotiation process, was that it be able to move into the space and set up business in time for the holiday shopping season. Id. at 4. Further, three weeks after entering the lease, Below Clearance sought to terminate it over concerns of the interior construction. Id. The meeting held in August 2002 to address these concerns focused on completing the interior construction in order to secure an occupancy permit so Below Clearance could open for business by mid-September. Id.
 {¶ 65} Clearly, Below Clearance's main concern was opening for business before the holiday season. Because the magistrate made no finding of fact that Below Clearance was fraudulently induced into signing the lease agreement or that Below Clearance fraudulently misrepresented a material fact, we conclude the trial court did not abuse its discretion when it adopted the trial court's decision.
 {¶ 66} Below Clearance's Fourth Assignment of Error is overruled.
 V {¶ 67} In its Fifth Assignment of Error, Below Clearance maintains the trial court abused its discretion when it concluded Refugee Road reasonably mitigated its damages. We disagree.
 {¶ 68} In Frenchtown Square Partnership v. Lemstone, Inc.,99 Ohio St.3d 254, 2003-Ohio-3648, the Ohio Supreme Court addressed the duty to mitigate damages caused by a lessee's breach of a commercial lease. In doing so, the Court held:
 {¶ 69} "1. A lessor has a duty to mitigate damages caused by a lessee's breach of a commercial lease if the lessee abandons the leasehold.
 {¶ 70} "2. The lessor's efforts to mitigate must be reasonable, and the reasonableness should be determined by the trial court." Id. at paragraphs one and two of the syllabus.
 {¶ 71} In her findings of fact, the magistrate reviewed Refugee Road's efforts to find a replacement tenant and concluded that Refugee Road's efforts were reasonable. Id. at 11. The trial court was required to adopt the magistrate's findings of fact and in doing so, properly concluded that Refugee Road mitigated its damages as required under both the terms of the lease and Ohio law.
 {¶ 72} We find the trial court did not abuse its discretion in reaching this conclusion because the law requires a landlord to make reasonable efforts to mitigate damages and the magistrate specifically found that Refugee Road made such an effort.
 {¶ 73} Below Clearance's Fifth Assignment of Error is overruled.
 {¶ 74} For the foregoing reasons, the judgment of the Court of Common Pleas, Fairfield County, Ohio, is hereby affirmed.
Wise, P. J. Edwards, J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.
Costs assessed to Below Clearance.
[1] We set forth Below Clearance's assignments of error as contained in the argument section of its brief, as opposed to the statement of its assignments of error, due to numbering and wording discrepancies between the two sections of the brief.
[2] These are the same elements for a claim of fraudulent misrepresentation. See Baddour v. Fox, Licking App. No. 03CA-77,2004-Ohio-3059, at ¶ 29.